**IN THE UNITIED STATES**
**PORTLAND DISTRICT OF MAINE**

DISTRICT OF MAINE
PORTLAND
RECEIVED & FILED

Civil Docket No.:

2020 MAR -4 P 4: 01

**1. Darryl Schneider,**
**2. Sandra Kimball,**

DEPUTY CLERK

Plaintiffs

**vs.**

**1. ABC, Inc. (ABC),** monetary damages,
**2. CNA Insurance Company (CNA),** monetary damages,
**3. Axis Insurance (AI),** monetary damages,
**4. Florida Lawyers Mutual Insurance Company (FLMIC),** monetary damages,
**5. Chart Industries Inc. (CI),** monetary damages,
**6. Free Methodist Church of North America (FMCNA),** monetary damages,
**7. Agency for Community Treatment Services (ACTS),** monetary damages,
**8. Florida Department of State and Legislative Affairs (FDS & LA),** non-monetary damages, Title 42, Chapter 21, Section 1988,
**9. Stephen Muldrow,** working for the Department of Justice **(DOJ),** non-monetary damages, Title 18, Chapter 216, Section 3333,
**10. Clarence Thomas,** Working for the U.S. Supreme Court **(USSC),** non-monetary damages, Title 18, Chapter 1, U.S. Code § 4 and Title 18, Chapter 216, Section 3333,
**11. David Bowdich,** Deputy Director of the Federal Bureau of Investigation **(FBI),** non-monetary damages, Title 18, Chapter 216, Section 3333,
**12. Kellyanne Conway,** Working as Senior Attorney for the Trump Administration **(TA),** non-monetary damages, Title 18, Chapter 216, Section 3333,

Defendants

**Trial by Common Law Jury (U.S. amend. VII) Demanded with a Trial Date Set in Stone.**

**COMPLAINT PURSUANT TO RACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT AND OTHER CAUSES OF ACTION**

**RICO Case Statement:**

When the powerfully corrupted take control over citizens'
inalienable rights for increased wealth and power by using the
corruptible, racketeering occurs.

During the beginning of 2012, the Plaintiff's mother, Gloria
Schneider, referred to in this complaint as the decedent, was
abused, neglected, exploited and murdered by her three (3)
caretakers.  On 6-29-12, the caretakers coerced the decedent
into signing two (2) false inheritance instruments that probate
attorney Robert Welker had finished drafting for them back in
3/2012 by way of a forged retainer agreement between himself and
the decedent.  This allowed Robert Welker to probate the
decedent's estate for more blood money after her death on 7-1-
12.  This was illegal enough, but the Hillsborough County
Sheriff's Office (HCSO) in Florida implemented an ongoing
vendetta against the Plaintiff, starting in 3/2012 by Colonel
James Previtera.  After the Florida Department of Law
Enforcement (FDLE) had investigated the death threat allegations
made by the Plaintiff against HCSO, James Previtera was
terminated from both his detention position and HCSO.  And his
friends at HCSO in turn refused to investigate and charge the

decedent's caretakers for her murder as a form of payback to the Plaintiff, costing him his inheritance under Florida Slayer Statute 732.802.  By beyond reasonable doubt evidence, HCSO had the 13th Judicial Circuit in Tampa, Florida implement their revenge against the Plaintiff by costing him any court awarded money from any lawsuit that he was party to in Hillsborough County, Florida.  Thus far, 29 local judges at both the 13th Judicial Circuit and the Second District Court of Appeals (2DCA) in Florida have defrauded the Plaintiff out of $1,081,720 as part of a corrupt enterprise under the Civil RICO Act as a favor to HCSO.  Without HCSO having denied requests from both state and federal government agencies to investigate the decedent's murder, this complaint would not have been filed.

What the naive Plaintiff discovered while attempting to obtain justice for himself and the decedent these last seven (7) long years, is that all American government agencies are geared towards covering up any type of crime, even murders, from its local state levels to the Trump Administration, simply by ignoring their employment requirements to enforce the penalties. Whenever a cover-up is wanted by a well-connected, corrupted official in charge of a state agency, even one just for spite, it is not only approved by the highest ranking elected state official, but there is absolutely no interference from any federal government agency or their corrupt allies, the media.

If a murder takes place and a high ranking government official is involved, the enterprising media is obligated not to report it without prior government approval as part of their allegiance to the powers that be. And if any long term assistance is needed from any government agency in continuing to whitewash illegal acts committed, they are efficiently and effectively given out like clockwork along with a smile and a back on the back as proud and loyal government protected confederates who operate above the law.

The problem with obtaining justice in in America today is that government involvement in corruption is so vast and inclusive, that exposing even one low ranking government employee involved in a petty crime, has the likelihood of also exposing the entire government and its high ranking affiliates of having done worse. The implementation of a totalitarian world order in America is complete. When fair and equitable laws for citizens are turned into meaningless and irrelevant garbage by judicial servants everywhere at the request of their superiors, or lose their job assignments and pay raises, it is time to flee that country to one having less dictators to please in acquiring the freedoms needed to survive.

The purpose of the continual RICO predicate acts that were committed by the four (4) corrupt enterprises cited in this complaint were: **1)** to continue monetarily injuring the

4

Plaintiff's business and property interests everywhere they had the ability to defraud the Plaintiff as bullies participating in HCSO's vendetta for either profit or gain (something of value). And **2)** to cover-up the six (6) or more types of prior racketeering activities committed under Title 18, chapter 96, Section 1961(1), by implementing and/or assisting in (even by turning a blind eye to) under Title 18, U.S. Code § 3, but not limited to **A)** murder under Title 18, Section § 1959 (committed by the primary enterprise), **B)** extortion under Title 18, Section § 880 (committed by the primary enterprise), **C)** extortionate credit transactions under Title 18, Sections § 891-894 (committed by the primary enterprise), **D)** influencing the operations of an employee benefit plan under Title 18, Section § 1954 (committed by the secondary, third and fourth enterprises, **E)** money laundering under Title 18, Section § 1956 (participated in by all four (4) enterprises) and **F)** wire and/or mail fraud used to implement honest services fraud under Title 18, Sections § 1341, 1343 & 1346 (committed by all four (4) enterprises).

The RICO predicate acts committed by Florida's state judicial enterprise (secondary enterprise) resulted in the Plaintiff's court cases not legally going to trial where evidence could have been brought to light before a neutral and unbiased jury for awarded monetary compensation to the Plaintiff and justice for the murdered decedent.

The local trial and appellate court judges have been the driving force in orchestrating and implementing the federal Racketeer Influenced and Corrupt Organizations Act (RICO) on the Plaintiffs and decedent. Consequently, the necessity for this complaint to be heard out of state for a chance at justice prevailing, is due to members of the Florida judicial branch of government having participated in the racketeering activities committed, thus the judicial accomplices have affected interstate commerce.

Fed. R. Civ. P. 8 requires the complaint to contain "a short and plain statement of the claim," but RICO claims that are based on mail or wire fraud (Title 18, Chapter 63, U.S. Codes § 1341 & 1343), must also satisfy Fed. R. Civ. P. 9(b) by stating the circumstances constituting fraud with particularity by identifying the time, place, and content of the fraudulent actions, as well as the parties to the actions. The heightened pleading standards under *Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqba,* are particularly important in RICO cases to protect defendants against baseless charges of racketeering. Consequently, this complaint is long, but clear and concisely written. Thus, the Plaintiff not only included the applicable RICO statutes and case laws to keep the honest judge hearing this case innocent of committing any errors, but as a reference aid available to everyone in the world. All the statements made

by the Plaintiff in this complaint were based only on the facts, most of which are documented in the Plaintiff's court case files.   The Plaintiff never filed one complaint in which actionable claims were not cited in support of the counts upon which damages should have been awarded.   And Rule 11(b)(3), which allows pleadings to be based on evidence that a party reasonably anticipates will surface following further discovery, always applies.

Finally, when opposing parties from the Plaintiff's court cases cited in this complaint decided not to come to court and settle their debts owed with honor and integrity because they knew that the presiding judges were out to defraud the Plaintiff, they made up their minds to come to court to defraud.   To the corrupted lawyer accomplices and their malpractice insurance carriers who participated in over forty (40) violations of Title 18, Chapter 63, U.S. Codes § 1341, 1343 & 1346, without any moral conscience, smiling in the Plaintiff's face while shaking hands with one another after each illegal win, winning unfairly without honor and integrity meant everything to them.   Now it is high time for them to finally lose with some!

"Never doubt that a small group of committed people can change the world.   Indeed, it is the only thing that ever has." Margaret Mead.

**Some Applicable Rules for Suing the Defendants in this Complaint:**

In this complaint, it is important to note that **1)** if a defendant was the owner of a company whose **company or himself** benefited from his having participated in a RICO predicate act, the owner is in violation of Title 18, Chapter 96, Section 1962(a) and his company can be sued for vicarious liability under the Respondeat Superior Doctrine. *Petro-Tech, Inc.*, 824 F. 2d at 1359 n. 11. **2)** If a defendant was a manager of a company who benefited the **company or owner** by permitting an employee or agent of the company during the scope of their employment to have participated in a RICO predicate act which benefited the **company or owner,** the manager is in violation of Title 18, Chapter 96, Section 1962(b) and the company can be sued for vicarious liability under the Respondeat Superior Doctrine. *Quick v. Peoples Bank of Cullman Cnty.*, 993 F.2d 793, 797 (11th Cir. 1993). **3)** 1) if a defendant was an employee or agent of the company who benefited the **company or owner** from his having participated in a RICO predicate act, the defendant is in violation of Title 18, Chapter 96, Section 1962(c) and the company can be sued for vicarious liability under the Respondeat Superior Doctrine. *Davis v. Mutual Life Ins. Co. of New York*, 6 F. 3d 367, 378-80 (6th Cir. 1993). **4A)** If a defendant as an employee or agent of a company, directly commits a RICO

8

predicate act as one of the principles that benefits a **company or owner**, or **4B)** if a defendant had a fiduciary duty (legal or ethical) to act appropriately once notified of a racketeering operation within a **company or agency** that was within their employment requirements to stop, with foreseeable racketeering activity **continuing** into the future, if they did not take the appropriate action, the defendant is in violation of Title 18, Chapter 96, Section 1962(c). Brady v. Dairy Fresh Products Co., 974 F. 2d 1149, 1155 (9th Cir. 1992). **5A)** If a defendant as an owner (Section § 1962(a), manager (Section § 1962(b), employee or agent (Section § 1962(c) with a fiduciary duty (legal or ethical) to act appropriately, by not violating Title 18, Chapter 96, Section 1962(d) (Pinkerton Doctrine), who had **beforehand knowledge** of what the RICO plan was that would continue to be implemented into the future, or **5B)** had a fiduciary duty (legal or ethical) to act appropriately **once notified** of a racketeering operation at an agency or company that was within their employment requirements to stop, with foreseeable racketeering activity continuing into the future, if the appropriate action was not taken, **but without any future racketeering activities occurring**, only a Title 18, Chapter 96, Section 1962(d) violation was committed, but you cannot sue a co-conspirator under the RICO Act without a future violation occurring under Title 18, Chapter 96, Section 1962(c).

9

All of the Defendants and their co-conspirators (accomplices) in this complaint are in violation of Title 18, Section 1962(a and/or b and/or c) which makes all of them also liable for damages under Section § 1962(d) because they knew what the RICO plan was before participating in it, <u>but the Plaintiffs are not suing all of the accomplices in this matter</u>.

Under Federal Rule 19, the Plaintiffs <u>can</u> choose which accomplices they sue for the full triple remedial damage amount, when together all of them unfairly and unethically exploited the Plaintiffs, illegally interfering with their property and business interests, affecting both intrastate and interstate commerce.

<u>Racketeering is a form of antitrust committed (unfair trade and competition for acquiring either products, or more importantly in this matter, services), when statewide judicial employees (both state and federal) in their individual capacities, allow members of an association (opposing parties) to monopolize a publicly used state court system to defraud an adverse party, who exchanged currency for honest services to be rendered (commerce), they have deprived the citizen of any value in what he or she paid for (honest services fraud)</u>. Call it the <u>Schneider Antitrust Act</u>. Consequently the Plaintiffs chose to sue only the Defendants cited, not their co-conspirators (accomplices), allowing the Defendants to decide if they want

to, or not, legally sort out their respective proportions of liability and payment with their fellow joint tortfeasors. Under Federal Rules 19(a)(1)(B)(i) and (a)(1)(B)(ii), there must either be a possibility that disposing of the action in the person's absence will "as a practical matter impair or impede the person's ability to **protect the interest,**" or a possibility that doing so will **"leave an existing party subject to a substantial risk of incurring double, multiple,** or otherwise inconsistent **obligations because of the interest."** **Neither of these conditions are applicable in this matter because 1) the co-conspirators (accomplices) have no interests other than a financial obligation to pay the Defendants their share of the moneys owed to the Plaintiffs, 2) the damage amounts are remedial, so either the Defendants owe the total damage amount or they do not owe anything. And 3) the evidence for awarding damages by this court is at the beyond reasonable doubt evidence level of what illegal acts were committed, and by whom. Although both judicial and attorney participation (actions taken) in this matter were required as a team effort to achieve the enterprises' goals, their attendance in this lawsuit under Rule 19(a)(1)(A) does not change the: 1) money amount owed, 2) evidence substantiating the counts and claims or 3) the co-conspirators all declaring bankruptcy as a means not to pay the Plaintiffs a penny after fraudulently dragging out each and**

**every court proceeding as they have done in the past**. **Consequently, criminal court is the only viable venue for punishing the co-conspirators**!

As with any **Rule 19(a)(1)(B)** case, deciding whether an absent **joint tortfeasor** is a required party **requires identifying the specific interest the absent party claims** and determining **whether the party's ability to protect that interest may be impaired despite the fact that it has not been named as a party in the action.** Compare Wilbur, 423 F. 3d at 1111–14. **Whether the judicial and attorney accomplices are required as parties in this matter depends on whether their interests qualify for protection under Rule 19(a)(1)(B)(i), even if** 1) it is alleged to have played a **central role** in the conspiracy, and 2) **even if resolution of the action will require the court to evaluate the absent party's conduct.** *Ward v. Apple, Inc.* 2015

We observed that "[j]oinder is 'contingent . . . upon an initial requirement that **the absent party claim a legally protected interest** relating to the subject matter of the action," id. at 689 (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F. 2d 1030, 1043 (9th Cir.1983)).

We have clarified that "**the interest** at stake need **not** be 'property in the sense of the due process clause.'" *Cachil Dehe Band*, 547 F. 3d at 970 (quoting *Am. Greyhound Racing*, 305 F. 3d at 1023). And we have required that **the interest "be more than**

**a financial stake**, and **more than speculation about a future event (bad publicity or future litigation and/or prosecution)**." Id. (internal quotation marks omitted).  "Within the wide boundaries set by these general principles, **we have emphasized the 'practical' and 'fact-specific' nature of the inquiry**." Id. *Ward v. Apple, Inc.* (2015).  It is **not practical** to allow 78 additional co-conspirators to be party to this case, nor is it going to change the case related **ultimate facts** which have been documented.

"It has long been the rule that it is **not** necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (percuriam); see also Fed. R. Civ. P. 19 advisory committee's note to 1966 amend.  (noting that "**a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability**").  **Antitrust conspirators are liable for the acts of their co-conspirators.** *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150,253-54 (1940); *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F. 2d 1360, 1367 (9th Cir.1980).  **It therefore follows that a plaintiff is "not required to sue all of the alleged conspirators in as much as antitrust co-conspirators are jointly and severally liable for all damages caused by the conspiracy.**" *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co., Inc.*,

668 F. 2d 1014, 1053 (9th Cir. 1982); see also *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 330(1955) **(holding that joinder of alleged antitrust co-conspirators was not mandatory "since as joint tort-feasors they were not indispensable parties")**; *Georgia v. Penn. R. R.*, 324 U.S. 439, 463 (1945) ("In a suit to enjoin a conspiracy not all the conspirators are necessary parties . . . ."). For this reason, an absent **antitrust co-conspirator generally will not be a required party under Rule 19(a)(1)(A), which applies only when a party's absence prevents the court from "accord[ing] complete relief among existing parties."**

This case, for example, illustrates why according complete relief will usually be possible without joining an absent co-conspirator like ATTM. If the Plaintiffs prevail, they will be able to recover all of their damages from Apple alone, see *Socony-Vacuum*, 310 U.S. at 253-54, without naming ATTM as a party. Accordingly, ATTM is not a required party under Rule 19(a)(1)(A). Ward v. Apple, Inc., (2015).

**When state and federal judges control an entire statewide court system as members of an enterprise, deliberately making it legal for those who have acquired stolen property in the amount of a felony ($300 in Florida), to keep the property for whatever reason, they have committed money laundering under Title 18, Chapter 95, Section 1956.**

Under Federal Rule 19 and the RICO Act, as a result of a **non-courtroom defrauding**, the victim or victims can file a RICO lawsuit against any co-conspirators who participated at least once, directly or indirectly in the RICO plan with an enterprise or association that committed at least two (2) RICO predicate acts on them under Section § 1961(1), resulting in at least one (1) injury to a property or business interest, **but the acts must "amount to or pose a threat of continued criminal activity."** H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 238-39 (1989).

Within the American court system, is the largest enterprise there ever was, and ever will be, in the history of planet Earth! Their members form government cooperative cabals operating within every state judicial circuit and district, who aid each other in violating the RICO Act whenever desired, with managing members in key appointed and elected positions, in violation of Title 18, Chapter 96, Section 1962(b), by giving their approval to trial and appellate court judges to defraud either plaintiffs or defendants.

The Plaintiff recently talked with a couple inactive attorneys who stated that after experiencing how utterly shameful and dirty they felt while being part of the American kangaroo court system of justice, they refused to practice law ever again and wish they could have thrown their bar licenses into the garbage

**out of embarrassment for having become attorneys, but could only inactivate them and find honest work elsewhere.   These were truly honorable men**!

The American court system is chuck-full of crooked and arrogant racketeering judges and attorneys, continuously looking to defraud the public at the drop of a hat for nothing more than shear satisfaction and increased self-esteem.  So to say that a defrauded party in a court case should have known that their judge was a member of an enterprise, is a very false statement because **they already knew**!  **The question to be asked first of a diligent person conducting an investigation into who was behind their being defrauded in a court case should be:  Can you prove by clear and convincing evidence (substantially more probable to being true than not) that your judge's judicial enterprise committed two (2) clear abuse of discretions that injured you during your court case in violation of the RICO Act?**

Under Federal Rule 19 and the RICO Act, but as a result of a **courtroom injury** implemented by a state judicial enterprise having defrauded a party or parties with **1)** an illegal dismissal pleading granted or **2)** an illegal permanent suspension of discovery due to a false pleading granted or **3)** any obvious illegal judicial order that benefits an opposing party that either filed a false pleading, or just subsequently acquiesced in the illegal benefit, that results in a permanent injury to a

16

property or business interest, if further legal recourse is not taken by the victim or victims, after the state judicial enterprise commits two (2) clear abuse of discretions, which under the RICO Act, amounts to two (2) RICO predicate acts committed under Section § 1961(1), by either the same judge, or a different judge, from the same state judicial enterprise, on at least one (1) of the same injured parties involved, during either **1)** a rehearing, **2)** an appeal or **3)** a new case, for the same or a different (any) property or business interest, with either different or the same opposing party or parties having participated or subsequently acquiesced in a second beneficial RICO predicate act committed, the victimized party or parties can sue any one of his or her judges and/or their co-conspirators under the RICO Act for the entire damage amount owed in any court case that resulted in his or her injury.

**In other words, any two (2) racketeering actions under Section § 1961(1), that were clearly committed by a state judicial enterprise through a judge or judges, resulting in at least one (1) permanent injury to a victim or victims' property or business interest, in any court case, without taking further legal recourse to correct the injury, is actionable under the RICO Act and the victim or victims can sue any of their judges and/or their co-conspirators for damages sustained in any court case where the injury took place.**

Most of the time, wire and mail frauds committed results in an immediate injuries, but blatantly false pleadings filed as direct wire or mail fraud solicitations to judges by opposing parties to defraud intended court case victim or victims do not. Consequently, the one who commits a clear abuse of discretion (honest services fraud) resulting in an injury during a court case is the judge, not an opposing party. All of the state judicial enterprise managers were notified by the Plaintiff, seeking their assistance after most of the illegal acts were committed on him by his judges, but each one of these managers subsequently acquiesced in (turned a blind eye) to seeing that the injuries sustained by the Plaintiff were reversed. The managers of the state judicial enterprise contacted by the Plaintiff were:  Rick Scott, Jorge Labarga, Pamela Bondi, Manuel Menendez, Ronald Ficarrotta and Edward LaRose, with notification dates documented throughout this complaint.

In a courtroom setting, the one (1) RICO predicate act with an injury committed by the **state judicial enterprise** through one of its judges, needs to pose a threat of continued criminal activity (two (2) or more) under Section § 1961(1). Consequently two (2) RICO predicate acts committed by the **state judicial enterprise, defrauding any one of the same victims either in 1) the same, 2) related or 3) unrelated court case,** are needed to show that a **RICO pattern** under Section § 1961(5)

of defrauding the same party or parties under Section § 1961(1) has been established before the state judicial enterprise and/or their co-conspirators can be sued for racketeering.

**Under the RICO Act, any enterprise is deemed to have racketeered if it commits two (2) RICO predicate acts on anyone.  The problem with suing your judge for doing so is that 1) he or she can declare bankruptcy and not pay you a penny.  And 2) it is difficult to find documented court cases where any judge from the same state judicial enterprise has clearly been guilty of having racketeered even once.  Under the *Rotella* case ruling, publicizing this information would allow victims to easily sue their judges as acting members in their state judicial enterprise along with their co-conspirators only after one (1) judicially implemented RICO predicate act is committed with an injury during one court case.**

A **co-conspirator** in a courtroom setting is an opposing party or parties who benefited by **1)** having filed a false pleading that was ruled favorably on or **2)** subsequently acquiesced in a false ruling, violations of the RICO Act.

**When parties to a court cases file blatantly false pleadings in order to win, the wire and/or mail fraud they commit, is an indirect future defrauding, known as a fraud on the court, on an intended victim or victims directed at the judge (solicitation) for his or her participation in committing honest services fraud**

(abuse of discretion). So if the judge reads clearly false allegations made in a pleading and <u>agrees</u> with the proposed wire or mail fraud scheme by intending to involve his or her enterprise in defrauding an intended victim, at least two (2) times, instead of ruling in favor of the intended victim or victims winning the court case due to the <u>blatant attempt by an opposing party or parties to commit a fraud on the court by wire and/or mail fraud with the aid of the state judicial enterprise</u>, then all association or enterprise members who intend to participate, are immediately in violation of Title 18, Chapter 96, Section 1962(d). Since it is the state judicial enterprise, with the approval of its management under Title 18, Chapter 96, Section 1962(b), that commits the RICO injury on the intended victim or victims, not an association of racketeers that includes opposing parties and the judge, the state judicial enterprise as a separate entity has to commit the two (2) RICO predicate acts (a pattern) as stated under Section § 1961(5), through a judge or judges.

<u>One common law fraud (wire and/or mail fraud) devised as a scheme (Title 18, Chapter 96, Section 1962(d)) to solicit a judge into injuring an intended court case victim or victims, in and of itself, is not actionable under the RICO Act, unless 1) the pleading clearly does not apply the correct laws based on the merits of the case that the judge has ruled favorably on</u>

**resulting in an injury sustained by the victim or victims and 2) one (1) more RICO predicate act is committed by the state judicial enterprise under Section 1961(1) on the same victim or victims, making it two (2) violation committed under Title 18, Chapter 96, Section 1962(c), if only by a judge wrongly affirming a prior RICO predicate act with an injury committed by another judge.**

There is only one way for a party or parties to a court case to have known there was racketeering committed on them by an enterprise during their court case without being told in order to take legal action against the enterprise and/or their co-conspirators for their sustained injury or injuries, and that is by clear and convincing evidence level amounts of racketeering (a pattern of two (2) or more RICO predicate acts committed) shown as proof that a conspiracy to defraud was acted on (committed) by a state judicial enterprise, and that is by it having implemented at least two (2) RICO predicate act through the same or another judge, during any court case on a the same victim or victims seeking compensation on either the same or a different (any) property or business interest, initiated by a clearly false pleading filed by any opposing party or parties as either an association **(false joinders),** or as individual participants **(false pleadings). Consequently, after two RICO predicate acts; two (2) violations of honest services fraud; two**

**(2) abuse of discretions; two (2) substantive due process right violations,** any victim can sue any judge and/or co-conspirator who participated directly or indirectly, in at least one (1) RICO predicate act committed against them, resulting in an injury, for the full compensation owed to them from that court case.

**So a second (2) RICO predicate act committed by the same or a different judge working for the same state judicial enterprise, defrauding the same party or parties in** _any_ **court case, injuring them at least once in** _any_ **property or business interest, resulting in a total of two (2) abuse of discretions that were** _clearly erroneous_, **respectively** _Rabkin v. Oregon Health Sciences Univ._, **350 F. 3d 967, 977 (9th Cir. 2003) and Fed. R. Civ. P. 52(a)(6);** _United States v. Cazares_, **121 F. 3d 1241, 1245 (9th Cir. 1997), are needed to rule out a** _onetime_ **judicial error, or a** _onetime_ **personnel defrauding of a disliked party by one (1) judge due to spite, before any co-conspirator with deep pockets who participated directly under Section § 1962(c) or indirectly under Section § 1962(d) (Pinkerton Liability Doctrine) in either court case, can be sued in federal court under the RICO Act for triple the entire compensation owed.** _The key word here is onetime. Multiple times (two (2) or more) with at least one (1) injury means that racketeering has occurred under the RICO Act, enacted by a judge or judges, who either requested or had_

standing permission given to them by their management team within their state judicial enterprise to do so. Until an injury happens, all participants can only be in violation of Title 18, Chapter 96, Section 1962(d).

A judge having committed one (1) abuse of discretion (Envtl. Def. Ctr., Inc. v. EPA, 344 F. 3d 832, 858 n.36 (9th Cir. 2003) is just as illegal as their having committed one (1) arbitrary, pretextual or capricious ruling, also known as a fraud on the court, or one (1) state and federal substantive due process right (civil rights) violation, all being causes of action in suing either a judge and/or his or her co-conspirators under Title 42, Chapter 21, Section 1983, but when two (2) abuse of discretions have been committed on the same party or parties where both rulings were clearly false, you can sue that judge who made the ruling and/or their co-conspirators (opposing parties or the second judge) under the RICO Act for any damages sustained.

When the word Plaintiff is used in this complaint, it is referring to Mr. Schneider. And when the word Plaintiffs is used in this complaint, it is referring to Mr. Schneider and Ms. Kimball.

Substantive due process right violations in the **courtroom setting** are evidentiary and ultimate facts that are illegally dismissed as irrelevant **first**, due to a clear abuse of

discretions that **secondarily** cause sustained, illegal procedural right violations.

Finally, the word "enterprise" used in this complaint only means an association of bad actors who participated in racketeering (RICO predicate acts committed), no matter where they were operating out of when they committed them.

**Defendant Specific Federal Count Violations, Based on What the Defendants' and Accomplices' Positions Were at the Time They Participated in Multiple Corrupt Enterprises, with Actionable Claims added to them at this Time to Begin Clearly and Concisely Identifying What Caused the Plaintiff's Damages under the Applicable Laws:**

**Section 1.** All state and federal judicial accomplices (secondary enterprise), either past or present employees of the government, can be sued for violations under **1) (Title 18, Chapter 96, Codes § 1961-1968)**, **2) (Title 18, Chapter 63, U.S. Codes § 1341, 1343 & 1346)**, **3) (Title 18, U.S. Code § 3)**, **4) (Title 42, Chapter 21, Section 1983)**, **5) Title 18, Chapter 13, U.S. Codes § 241 & 242**, **6) Title 18, Chapter 95, Section 1956 and 7) Fraud on the Court.** Remedial triple damage amounts and attorney's fees with a lodestar multiplier could be demanded, but under Section § 1983, regular damages along with punitive

amounts and attorney's fees could be asked for instead, when **in** their individual capacities, during the course of their official capacities, they directly implemented and/or assisted in (even by turning a blind eye to) under Title 18, U.S. Code § 3, the racketeering activities listed under **(Title 18, U.S. Code § 1961(1))**, but not limited to **1)** murder (Title 18, Section § 1959), **2)** extortion (Title 18, Section § 880), **3)** extortionate credit transactions (Title 18, Sections § 891-894), **4)** influencing the operations of an employee benefit plan (Title 18, Section § 1954), **5)** money laundering under (Title 18, Section § 1956), first committed by Robert Foster when he illegally dismissed a lis pendens knowing that the $65,000 less than the fair market value proceed amount of $165,000 from the sale of the murdered decedent's home, was going to her murderers who forged her signature on the sales contract before her death and **6)** wire and/or mail fraud used to implement honest services fraud under Title 18, Sections § 1341, 1343 & 1346 for the purposes of defrauding the Plaintiffs and decedent out of their state and federal substantive due process rights (civil rights) when they were required by law to act appropriately. The accomplices cited in this Section participated under either **(Title 18, Chapter 96, Section 1962(b)** as managing partners within the secondary enterprise, and/or under **(Title 18, Chapter 96, Section 1962(c)** as principals in the secondary enterprise's

numerous RICO predicate acts committed for the purposes of **A)** monetarily damaging the Plaintiffs' business and/or property interests by laundering money owed to them under Title 18, Chapter 95, Section 1956 and **B)** covering up the prior racketeering activities of the three (3) local enterprises. The accomplices are: <u>**Jorge Labarga, Manuel Menendez & Ronald Ficarrotta**</u> (primary upper management under Sections § 1962(b & c) within the secondary enterprise and <u>given constructive notice of the frauds committed on the Plaintiffs with a reasonable amount of time to take the appropriate action</u>), Bernard Silver, William Levens, Clarence Thomas <u>(given constructive notice and a reasonable amount of time to take the appropriate action)</u>, Robert Foster, Mark Wolfe, Richard Nielsen, Paul Huey, Elizabeth Rice, Robert Foster, Catherine Catlin, Robert Bauman, Joelle Ober, Chet Tharpe, Claudia Isom, Jack St. Arnold, Morris Silberman, Charlene Honeywell, Morris Silberman, John Badalamenti, Marva Crenshaw, <u>Edward LaRose</u> (secondary upper management under Sections § 1962(b & c)) within the secondary enterprise and <u>given constructive notice and a reasonable amount of time to take the appropriate action)</u>, Patricia Kelly, Matthew Lucas, Robert Morris, Susan Rothstein-Youakim, Samuel Salario, Daniel Sleet, Anthony Black, Craig Villanti, Stevan Northcutt and Nelly Khouzam.

**Further Analysis of the Ultimate Facts and Applicable Laws Supporting the Counts of Section 1:**

The judicial accomplices **have no absolute immunity from suit** when they participated in the secondary enterprise (state judicial enterprise) that orchestrated, committed and covered up under Title 18, U.S. Code § 3, RICO predicate acts for the purposes of **1)** monetarily damaging the Plaintiffs' business and/or property interests by laundering money owed to them under Title 18, Chapter 95, Section 1956 and **2)** to cover-up the prior racketeering activities of the three (3) local enterprises, all while sitting on the bench protecting their assigned positions, future pay raises and retirement benefits.  The problem with a large and powerful gang is that when a **team member** is called upon to perform a task as part of a **team plan**, their participation had better be effectively given, or else they risk either being **1)** punished with a demotion (the demotion of both Mark Wolfe and Elizabeth Rice to criminal court for not being effective enough), or **2)** terminated from the gang, as in a career change for the worst.

**The civil rights violations. (torts) that were repeatedly committed by the judicial accomplices as a team effort, formed a pattern of racketeering activity that contravened the Plaintiffs' 5th and 14th amendment rights as an enterprise, not as**

27

individuals acting in their individual capacities while sitting on the bench.

It is a private, non-judicial and illegal action for any judge to go outside the jurisdiction and scope of their job duties and participate with an enterprise for the purpose of defrauding a citizen out of their state and federal substantive due process rights while sitting on the bench. Consequently, the judicial accomplices do not have immunity from suit for causing damages to the Plaintiffs when they participated in racketeering activities, no matter where they were sitting at the time! See *Committee to Protect our Agricultural Water v. Occidental oil*, 235 F. Supp. 3d 1132, Id at paragraph 55.

Judicial immunity ends when a judge forms the requisite criminal intent under Section § 1962(d) to purposely violate the RICO statutes and then participates with an enterprise under Section § 1962(c) in facilitating racketeering activities, monetarily damaging the Plaintiffs' business and/or property interests by laundering money owed to them under Title 18, Chapter 95, Section 1956 for any contrived reason while in their official capacity when he or she was really working for an enterprise.

As employees within a government agency, the judicial accomplices had a government imposed fiduciary duty to uphold the laws of the U.S. constitution for its citizens (the Plaintiffs and decedent). By the judicial accomplices having

<u>known what the basics of the RICO plan were, and then having</u> <u>participated in, or managed, the plan during its unfolding as</u> <u>approving partners within multiple enterprises, they committed</u> <u>violations under both Title 18 U.S. Section 1962(b and/or c).</u> <u>Consequently, they can be sued for damages under the RICO Act</u> <u>for not having acted appropriately while sitting on the bench.</u>

The defendant must be aware of the enterprise's conduct and play some role on behalf of the enterprise. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120-21 (2d Cir. 2013). **This may be shown, for example, if a group bands together (judges and lawyers) to commit a pattern of racketeering that they could not accomplish on their own.** *In re Ins. Brokerage Antitrust Litigation*, 618 F. 3d 300, 378 (3d Cir. 2010).

**In order for the judicial accomplices (referees) to have pulled off defrauding the Plaintiffs out of any money owed, they needed the lawyer accomplices to provide the <u>government function</u> of electronically filing, and mailing in clearly false pleadings to the court for it to falsely rule on, filing false orders with the clerk of the court, violations under Title 18, Chapter 63, U.S. Codes § 1341, 1343 & 1343. A fraud on the court committed by officers of the court, that also satisfies all of the requirements under the RICO Act, is considered racketeering by officers of the court.**

What is **not** racketeering under the RICO Act is when a judge either errors when making a ruling, **or who on their own accord, personally and deliberately makes a false ruling during the course of their judicial capacity for whatever reason with the help of an attorney who filed a false pleading in order to benefit himself or his client**. An isolated false ruling intentionally made by a judge to defraud a party, is nothing more than **a fraud on the court** that an appeal should be able to reversed, but this was not the case in this matter. **A fraud on the court is not, in and of itself, racketeering because the act of committing a fraud on the court is not racketeering by an enterprise under the Civil RICO Act. An enterprise has to have (1) a common or shared purpose among its members; (2) some continuity of structure and personnel and (3) an ascertainable structure distinct from that inherent in the pattern of racketeering, in order to exist.** Even an association in fact type of enterprise has all of these requirements. **Numerous frauds upon the court committed by multiple enterprises, monopolizing a public court system (commerce) that implements blatant honest services fraud (antitrust) over and over and over again to accommodate all participating enterprises until they have defrauded a party right out of court, injuring their business and/or property interests, is most definitely racketeering under the Civil RICO Act.** The structure of the

30

Florida's state judicial enterprise needs to be taken apart for having been nothing but a burden and an embarrassment to the American legal system, but perhaps this is what it was always meant to be.

**THERE WERE AT LEAST FORTY (40) COUNTS OF RICO PREDICATE ACTS COMMITTED BY FLORIDA'S STATE JUDICIAL ENTERPRISE, SPECIFICALLY UNDER TITLE 18, CHAPTER 63, SECTIONS 1341, 1343 & 1346 IN THE FORM OF FALSE PLEADING AND ORDERS DOCUMENTED IN THE CASE FILES OF THE PLAINTIFF'S ELEVEN (11) TRIAL, ONE (1) FEDERAL AND OVER A DOZEN (14) APPELLATE COURT CASES. FALSE ORDERS WERE INTENTIONALLY MADE BY THIRTY (30) LOCAL DISTRICT JUDGES (LOWER, FEDERAL AND APPELLATE DIVISION). ALL OF THE LAWYERS WHO WERE PARTY TO THE PLAINTIFF'S CASES KNEW TO PERFORM THE SAME GOVERNMENT FUNCTION OF FILING THE SAME TYPES OF UNEQUIVOCALLY FALSE PLEADINGS THAT JUDGE BERNARD SILVER GRANTED IN THE PLAINTIFF'S TORTIOUS INTERFERENCE COURT CASE (RESPECTIVELY 14-CA-10278, ON 2-6-15) TO ILLEGALLY END THE REST OF THE PLAINTIFF'S CASES WITH. THIS ILLEGAL OPERATION OF CLEARLY DENYING THE PLAINTIFF HIS CIVIL RIGHTS WAS CONTRIVED USING A CORRUPT LEGAL SYSTEM ALREADY IN PLACE THAT MONETARILY DAMAGED HIM WITH AN OBVIOUS PATTERN AND PURPOSE. THERE WAS ONLY ONE RATIONAL EXPLANATION FOR WHY SO MANY JUDGES HAD GIVEN SO MANY BLATANTLY FALSE RULINGS IN THE SAME DISTRICT. THE JUDICIAL ACCOMPLICES WERE ABSOLUTELY, POSITIVELY, BY BEYOND REASONABLE**

31

DOUBT EVIDENCE, PART OF THE SECONDARY ENTERPRISE FORMED IN THIS MATTER BY HCSO AND THE CHIEF JUDGE'S OFFICE WITHIN THE 13TH JUDICIAL CIRCUIT, WITH THE SOLE PURPOSE OF DEFRAUDING AND DEPRIVING THE PLAINTIFF OUT OF ANY COURT AWARDED MONEY!

Judicial immunity is overcome in only two sets of circumstances: **1)** A judge is not immune from liability for non-judicial actions, i.e., **actions not taken in a judge's judicial capacity, (but actions taken while off the clock that violate civil rights as a member of an enterprise)**, and **2)** a judge is not immune for **actions**, though judicial in nature, **taken in complete absence of all jurisdiction as a judge (actions taken while on the clock that violate civil rights as a member of an enterprise)**. *Mireles v. Waco,* 502 U.S. 9 (1991), 112, S. Ct. 286, 116 L. Ed. 2d. 9, 60 USLW 3304 & 3307.

**Any participation in furthering RICO predicate acts to be committed by an enterprise, either while off or on the clock, is racketeering under the RICO Act.** And it is unconstitutional for anyone who damages a citizen by participating in racketeering activities, to be allowed immunity from having to pay for damages that they helped cause. **This would mean that in America, some corrupted public servants are considered a higher class of human being by their government while working on the clock and are therefore allowed a license to defraud the lower classes.** This fallacy is seen as creative art imitating a

Hollywood pipedream from those who authored the fiction series stories *James Bond,* where the main character had a license to kill given to him by his government because he was considered a higher class of human being while working as a government spy. **Unconstitutional malarkey!** And the official response as to why judges have immunity **(not including the RICO Act and Section §  1983 federal statute violations)** from suit for deliberately defrauding citizens in court, is the oxymoron reason that judges would be too restricted to make unbiased and correct rulings. **Sheer fraud!  The correct answer is:  Judges would have to be impartial and unbiased on the job no matter what their personal motives really were at work, if they knew they would be personally sued for damages for making even one deliberate mistake.  And any frivolous lawsuits against a judge would be dismissed on motions to dismiss and affirmed on appeal.**

Replace state judges with computers that are programed with state and federal statutes and common laws, programed by magistrates, and every state court ruling given, no matter which court a party is in, will be consistently fair and correct because the rulings will be based only on relevant laws and actionable claims, not on biased and arrogant tyrants in positions of power.  And together all state governments will save billions of dollars on both trial and appellate court judicial salaries.

In all of the Plaintiff's many court cases, the seemingly inept presiding judges did <u>not</u> perform their duties as required as judges when they applied irrelevant case laws and inapplicable statutes when making their rulings, <u>even when a few of them who had smiled at the Plaintiff just before making one last false ruling, were given the ultimatum by the Plaintiff of either not to do so, or be sued under the Civil RICO Act</u>! No judge acting on his own would have dared erred by dismissing a murder case (12-CP-1669) with prejudice and cost an unknown party (Plaintiff) a million dollars, unless he or she was told to do so by their superior and knew for sure they would not be penalized for any illegal acts committed because their gang was untouchable! This deliberate failure of all the judicial accomplices <u>not</u> performing their judicial functions correctly as judges, <u>but successfully as functioning members of an extremely large and well organized enterprise on a mission to implemented the same pattern of racketeering activities used to defraud the same party for the same purpose of sustaining the same types of damages in ten (10) court cases, allows them to be sued by this same party for monetary compensation as active participants under the Civil RICO Act</u>!

If a judge (government employee in an action of law) is in violation of Title 18, Chapter 96, Codes § 1961-1968) while sitting on the bench in the course of his official capacity, he

or she along with any non-government co-conspirators who aided and abetted, are also in violation of Title 42, Chapter 21, Section 1983, but the reverse is not true.

**In Determining Whether a Judge is Shielded from Liability under § 1983 by Absolute Immunity:**

The approach looks to the nature (purpose) of the function performed, not the identity of the actor (judge) who performed it. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). And also stated in this case:   Certain immunities were so well established when § 1983 was enacted that this Court presumes that Congress would have specifically so provided had it wished to abolish them.   Most public officials are entitled only to qualified immunity (discretionary actions performed within their official capacity, unless their actions violated "clearly established" federal law or constitutional rights).   However, sometimes their actions fit within a common-law tradition of absolute immunity.  **Whether they do is determined by the nature of the function performed, not the identity of the actor who performed it.**

A state court judge does not have absolute immunity from a damages suit under § 1983 for his decisions to demote and dismiss a court employee.  *Forrester v. White*, 484 U.S. 223-230 (1988).   Accordingly, the Court has applied a "functional"

approach under which the nature of the functions entrusted to particular officials is examined in order to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions. Even with respect to constitutional immunities granted for certain functions of Congress and the President, the Court has been careful not to extend the scope of protection further than its purposes require. Pp. 484 U. S. 223-225. Truly judicial acts, however, must be distinguished from the administrative, legislative, or executive functions that judges may occasionally be assigned by law to perform. **It is the nature of the function performed -- adjudication (a formal judgment made only on the merits of a disputed matter) -- rather than the identity of the actor.** Page 484 U. S. 220. And 792 F. 2d 647, reversed and remanded. O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C.J., and BRENNAN, WHITE, MARSHALL, STEVENS, and SCALIA, JJ., joined, and in all but Part II of which BLACKMUN, J., joined.

**When a judge participates in a non-judicial type capacity under either Code § 1983 or Codes § 1962(b or c) while sitting on the bench in their official capacities, they are liable for actual damages that they cause, but under the RICO Act, the damage amounts are triple remedial.**

**Section 2.**   The CNA, FLMIC, AI, CI, FMCNA and ACTS company owners (Section § (1962(a)), their managers (Section § (1962(b)) and their employees and agents (facilitators under Section § (1962(c)) (third enterprise), **who benefited their companies from the ongoing RICO predicate acts committed on the Plaintiff or Plaintiffs under either Title 18, Chapter 96, Sections 1962(a, b or c),** when they illegally either protected their companies, their affiliates, their insured lawyers, the law firms of their insured lawyers, their insured lawyer's professional associations or corporations, from having to pay a court imposed monetary debt payable to the Plaintiff or Plaintiffs, **made their companies vicariously liable under the Respondeat Superior Doctrine, in conjunction with Section 1962(a, b or c) violations for the Plaintiff's or Plaintiffs' damages.**   All of the third enterprise Defendants cited in this Section are as guilty as the principles (employees or agents) who committed the RICO predicate acts under **(Title 18, Chapter 96, Section 1962(c))** when they **1)** monetarily damaging the Plaintiffs' business and/or property interests by soliciting the court or courts to launder money owed to the Plaintiffs under Title 18, Chapter 95, Section 1956 and **2)** covered up the prior racketeering activities of either the primary, secondary or their own third enterprise under **(Title 18, U.S. Code § 3)**.

37

Under the Pinkerton Liability Doctrine used in Title 18, Chapter 96, Section 1962(d), the third enterprise Defendants cited in this Section (no distinction requirement under RICO between an owner and a company, *Petro-Tech, Inc.*, 824 F. 2d at 1361), were principals in the wrong committed on the Plaintiffs just by having consciously shared in the RICO plan, whether or not they directly participated in any of the RICO predicate acts committed. Supreme Court of the United States in *Pinkerton v. United States,* 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946). This also means that 1) when RICO predicate acts are committed in furtherance of a conspiracy under Title 18, Chapter 96, Section § 1962(d), anyone within an enterprise who consciously shared in the RICO plan is liable for damages equal to the principal, or principals, who committed the damages and can be held liable themselves for damages under Title 18, Chapter 96, Section § 1962(a, b or c), depending on what their positions were within each enterprise that they participated with.

More importantly, 2) when a company or company owner benefits (not necessarily by money) from any one of their employees having committed a RICO predicate act under Title 18, Chapter 96, Section 1962(c), the company itself can be sued for vicariously liable under the Respondeat Superior Doctrine in conjunction with a Section 1962(a, b or c) violation, if the

employee was working within the scope of their employment, even if the employee acted with an improper purpose and ultimately cheated the company, and/or one of the owners and the third person. *Harrison v. Dean Witter Reynolds, Inc.*, 715 F. Supp. 1425 (N.D. Ill. 1989).

The racketeering activities under Title 18, Chapter 96, Section 1961(1) that were directly implemented and/or assisted in (even by turning a blind eye to) under Title 18, U.S. Code § 3, by the third enterprise Defendants in this matter are applicable to at least numbers 4, 5 and 6 of the following: **1)** murder (Title 18, Section § 1959), just FLMIC, CNA and AI; **2)** extortion (Title 18, Section § 880), just FLMIC, CNA and AI; **3)** extortionate credit transactions (Title 18, Sections § 891-894), just FLMIC, CNA and AI; **4)** influencing the operations of an employee benefit plan (Title 18, Section § 1954); **5)** money laundering under (Title 18, Section § 1956), first committed in this matter by Robert Foster when he illegally dismissed a lis pendens knowing that the $65,000 less than fair market value proceed of $165,000, from the sale of the murdered decedent's home was going to her murderers who forged her signature on the sales contract before her death and **6)** wire and/or mail fraud used to implement honest services fraud under Title 18, Sections § 1341, 1343 & 1346 for the purposes of **A)** monetarily damaging the Plaintiffs' business

and/or property interests by soliciting the court to launder money owed to the Plaintiffs under Title 18, Chapter 95, Section 1956, **B)** covering up the prior racketeering activities of any and all of the three (3) local enterprises. And most definitely for **C) benefiting from the RICO predicate acts committed by not having to pay a penny as a monetary award to the Plaintiff or Plaintiffs when they were required by law to act appropriately during the following court cases:**

**(1) Florida Lawyers Mutual Insurance Company (FLMIC)**, in cases 14-CA-12257, 2D18-694, 17-CA-4051, 2D18-1889, and 2D19-1384, from 2014 to present, **for injury to a property interest in the amount of $1,060,000.; (2) CNA Insurance Company (CNA)**, in cases 14-CA-10278, where the RICO plan caused case 8-17-CV-219-7-36MAP to be illegally dismissed, 16-CA-4693, 2D17-2243, Florida SC18-590, U.S. SC17-9268, 17-CA-4051 and 2D19-1384, from 2014 to present, **for injury to a property interest in the amount of $1,060,000.; (3) Chart Industries, Inc. (CI)**, in cases 17-CC-403, 18-CA-1537 and 2D18-4761 (acting as their own insurance company), from 2017 to present, **for injury to a business interest in the amount of $15,000.; (4) Axis Insurance (AI)**, in case 17-CA-4051 and 2D19-1384, from 2017 to present, **for injury to a property interest in the amount of $1,060,000.; (5) Free Methodist Church of North America (FMCNA)**, in case 17-CA-6219,

acting as their own insurance company, starting on 12-06-18, liable from 2-4-17 to present, **for injury to** Mr. **Schneider for stolen property in the amount of $720. And FMCNA, also liable From 2-4-17 to 6-17-21 to Ms. Kimball, when she would have been released from TN-24's, or another residential aftercare program.** Ms. Kimball was wrongly expelled from her aftercare program by **TN-24** on 2-4-17, a sister company, sponsored, funded and technically owned by FMCNA. Consequently, FMCNA currently owes Ms. Kimball for her time spent in prison for the remainder of her 18 month prison sentence, starting around 3-02-17 and ending around 1-01-18, because FMCNA was responsible for TN-24 having violated Ms. Kimball's community control (house arrest) that was to end on 6-16-17. And FMCNA also owes Ms. Kimball for 123 days in jail, from 10-12-18 to 10-28-18 (Hillsborough County), from 5-7-19 to 7-22-19 (Hillsborough County), from 9-13-19 to 10-10-19 (Pinellas County) and from 11-24-19 to 11-26-19 (Hillsborough County). **At a $300 per day imprisonment rate. Around $117,900 total damage amount is currently owed to Ms. Kimball by FMCNA.** Florida Department of Corrections (DOC) had instructed TN-24, **as part of Ms. Kimball's judgment and sentence**, to protect her 24/7 from any further injury from vagrants or law enforcement until both her community care and aftercare had finished on respectively 6-16-17 and 6-16-21. **Ms. Kimball had been a good girl and done everything required to accommodate this protection**

41

**from TN-24!**   Since Ms. Kimball's **1)** community control, **2)** aftercare and **3)** court ordered judgment and sentence were wrongly and abruptly terminated by TN-24, a deliberate breach of fiduciary duty to Ms. Kimball in order to injure her with malice, **FMCNA, as the owner of TN-24, was and is, liable to Ms. Kimball for any future incarceration from 2-4-17 until 6-17-21**. **(6) Agency for Community Treatment Services (ACTS)**, in case 17-CA-6219, acting as their own insurance company, starting on 11-20-18, is liable from 10-12-15 to present, **for stolen apartment furnishings (property) at 13145 20th St. N., Apt. 209, Tampa, FL 33612, owned by Mr. Schneider, in the current amount of $6,000;** and to Ms. Kimball in the current amount of **$1,824** for stolen SSI money.   And for $300 per day for every day Ms. Kimball was falsely imprisoned with an illegal Hillsborough County Detention Center hold on her (false imprisonment), from 10-12-15 up until 5-31-16, which is approximately **$66,600** for about 7.4 months. And ACTS also owes Ms. Kimball for 6 months incarceration in an **inappropriate** jail diversion program (abuse of process) from 6-29-16 to 1-29-17.   So the approximate amount of **$54,000** for 6 months incarceration added to the bill is approximately **$122,424 for a total @ $300 per day, for about 13.4 months, plus the $1,824, excluding damages for emotional distress.**

Together, all six (6) Defendants cited in Section 2 (third enterprise) <u>knowingly and deliberately</u> filed false pleadings and/or joinders before each court hearing, either themselves or through their insured clients, employees or agents, that provided the government function for the state judicial enterprise accomplices to have defrauded the Plaintiffs and decedent out of their state and federal substantive due process rights (civil rights), when they violated <u>1) (Title 18, Chapter 63, U.S. Codes § 1341, 1343 & 1346)</u>, <u>2) (Title 18, Chapter 96, Codes § 1961-1968)</u>, <u>3) (Title 42, Chapter 21, Section 1983)</u>, <u>4) (Title 18, Chapter 13, U.S. Codes § 241 & 242)</u>, <u>5) (Fraud on the Court)</u>, <u>6) (Title 18, U.S. Code § 3)</u> and <u>7) (Respondeat Superior Doctrine)</u>. Triple remedial damage amounts and attorney's fees with a lodestar multiplier are demanded, but under Section § 1983, regular damages along with punitive amounts and attorney's fees could also be asked for instead. Together the activities of the third enterprise Defendants in Section 2 were not passive to the racketeering scheme after having knowledge of the current and ongoing plan by Florida judges to defraud the Plaintiffs in their property and/or business interests when they committed the following: **1)** covered up the prior racketeering activities committed on the Plaintiffs and decedent, **2)** permitted their employees or agents to participate in assisting the local judges and/or other accomplices under (Title 18, Chapter 96, Section

1962(d & c)) in clearly soliciting the judges to denying honest services (abuse of discretion) for their benefit, when they intended to, and submitted, mail and/or wire fraud solicitations for the judges to rule favorably on, illegally injuring the Plaintiffs' cases, violations under (Title 18, Chapter 63, U.S. Codes § 1341, 1343 & 1346) **(no distinction requirement under RICO between an owner and a company, Petro-Tech, Inc., 824 F. 2d at 1361)**. And **3)** had their managers (1962(b) permit the RICO predicate acts committed, violations under **(Title 18, Chapter 96, Section 1962(b))**, by having **created subsidiary insured/agent positions** (just CNA, FLMIC & AI) to carry out the racketeering activity under Section § 1962(c). *District 1199P Health & Welfare Plan v. Janssen, L.P*, No. 06-CV-3044, 2008 WL 5413105, at *15 (D.N.J. Dec. 23, 2008).

The Defendants, employees, insured agents, agents and accomplices are: **1) Florida Lawyers Mutual Insurance Company** in cases 14-CA-12257, 2D18-694, 17-CA-4051, 2D18-1889, and 2D19-1384, implemented by agent Lee Pearlman the insured, in cases 14-CA-12257, 17-CA-4051 and 2D19-1384, **with judicial accomplices** William Levens in case 14-CA-12257, Mark Wolfe in case 14-CA-12257, Robert Nielsen in case 14-CA-12257, Elizabeth Rice in case 17-CA-4051, Patricia Kelly in case 2D18-694, Matthew Lucas in case 2D18-694, Samuel Salario in case 2D18-694, respondeat superior Edward LaRose to 2DCA judges in cases 2D18-694 and

44

2D18-1889, Morris Silberman in case 2D18-1889, Robert Morris in case 2D18-1889 and John Badalamenti in case 2D18-1889; **2) CNA Insurance Company** in cases 14-CA-12257 (on 9-5-17) wire fraud without damages, 14-CA-10278, 16-CA-4693, 2D17-2243, Florida SC18-590, U.S. SC17-9268, 17-CA-4051 and 2D19-1384, implemented by employees Robin Black in case 2D17-2243 and Bowen Brown in cases 17-CA-4051 and SC18-590 and for CNA hiring Eccleston and Wolf, a Washington D.C. law firm that intelligently filed a waver in response to case U.S. SC17-9268 knowing that no U.S. Supreme Court judge, handpicked by the crookest crooks in the American government, would agree to hear a multi-level government corruption case against their own. And for CNA also hiring the law firm Grower, Ketcham, Eide, Telan & Meltz, P.A., in case 2D19-1384, the insured's friend, agent Thomas Rydberg, in cases 14-CA-10278 and 16-CA-4693, **with judicial accomplices** Bernard Silver in case 14-CA-10278, Charlene Honeywell who helped CNA Insurance Company from case 14-CA-10278, in case 8-17-CV-219-7-36MAP, Paul Huey in cases 16-CA-4693 and 14-CA-10278, Elizabeth Rice in case 17-CA-4051, Morris Silberman in case 2D17-2243, Daniel Sleet in case 2D17-2243, Matthew Lucas in case 2D17-2243, Clarence Thomas in case U.S. SC17-9268 and Florida Department of State and Legislative Affairs in case SC18-590; **3) Chart Industries, Inc.** in cases 17-CC-403, 18-CA-1537 and 2D18-4761 (implemented by agents Janice Pickett in case

17-CC-403, Michael D'Lugo in cases 18-CA-1537 and 2D18-4761,
Wicker, Smith, O'Hara, McCoy & Ford, P.A. in cases 17-CC-403,
18-CA-1537 and 2D18-4761, **with judicial accomplices** Joelle Ober
in case 17-CC-403, Chet Tharpe in case 18-CA-1537, Craig
Villanti in case 2D18-4761, Daniel Sleet in case 2D18-4761,
Anthony Black in case 2D18-4761 and respondeat superior Edward
LaRose in case 2D18-4761; **4) Axis Insurance** in cases 14-CA-12257
(on 9-1-17 and 9-6-17) wire fraud without damages, 17-CA-4051
and 2D19-1384, implemented by agents Spector Gadon & Rosen,
P.C., Michael McGirney and Thomas Rydberg the insured, **with
judicial accomplices**, Elizabeth Rice in case 17-CA-4051 and
Nelly Khouzam the new chief judge of the 2DCA as of mid. 2019
and respondeat superior to her cooperative three judge panel of
jackals, Robert Morris in case 2D19-1384, Edward LaRose in case
2D19-1384 and Stevan Northcutt in case 2D19-1384 and **5) Free
Methodist Church or North America** in case 17-CA-6219,
implemented by agents Butler, Weihmuller, Katz and Craig LLP,
William Linero Jr. and Abraham Shakfeh, **with judicial accomplice**
Elizabeth Rice and **6) Agency for Community Treatment Services** in
case 17-CA-6219, implemented by agents Boyd, Richards, Parker
and Colonnelli P.L., Joseph Riopelle and Jessica Welsh, **with
Judicial Accomplice** Elizabeth Rice. **Including the following
managing co-conspirators:** Manuel Menendez 2012 to 2015, Ronald
Ficarrotta 2015 to present, Ricky Polston from 2012 to 2014,

Jorge Labarga from 2014 to 2018, Charles Canady from 2018 to present, Rick Scott from 2012 to 2019, Pamela Bondi from 2012 to 2019, Ashley Moody from 2019 to present and Ron DeSantis from 2019 to present. **EVIDENCE OF OVER EIGHTY (80) WIRE AND MAIL FRAUDS UNDER TITLE 18, CHAPTER 63, U.S. CODES § 1341, 1343 & 1346 COMMITTED BY THIRD ENTERPRISE DEFENDANTS AND THEIR JUDICIAL ACCOMPLICES DURING RACKETEERING SCHEMES AGAINST THE PLAINTIFFS RESULTING IN INJURIES TO THEIR PROPERTY AND BUSINESS INTERESTS, ARE IN THE APPENDICES AND CASE FILES.**

**Further Analysis of the Ultimate Facts and Applicable Laws Supporting the Counts of Section 2:**

Racketeering Activity—Issues Relating to Mail and Wire Fraud (Mail fraud (18 U.S.C.A. § 1341) and Wire fraud (18 U.S.C.A. § 1343)) are included as racketeering activities and are alleged as predicate acts in a **"high percentage"** of civil RICO claims. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997). Criminal mail fraud involves **(1)** a scheme based on intent to defraud; and **(2)** the use of the mails to further that scheme. *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 455 (S.D.N.Y. 1998). A scheme to defraud encompasses **"acts of artifice or deceit which are intended to deprive an owner of his property or money."** *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, No. 92-CV-2808, 1993 WL 8340 (N.D. Ill. Jan. 8, 1993), judgment aff'd, 20 F. 3d 771 (7th

47

Cir. 1994).   The elements of mail or wire fraud have been identified as:

(1) A plan or scheme to defraud;

(2) Intent to defraud;

(3) Reasonable foreseeability that the mail or wires will be used; and

(4) Actual use of the mail or wires to further the scheme.   See *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F. 3d 402 (8th Cir. 1999).   See also *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 455 (S.D.N.Y. 1998) (noting that elements of mail fraud are **more broadly defined** than elements of common law fraud).

The six (6) Defendants cited in Section 2 are liable for damages owed to the Plaintiff or Plaintiffs under the Civil RICO Act because **they benefited while committing RICO predicate acts during court cases that they were party to when they either 1)** received fees paid into them by their clients (accomplices) during litigation, and/or **2)** felt satisfaction in having benefited their insured by defrauding either of the Plaintiffs. **This is the corrupt gang mentality which immediately manifests in a weak and spineless person's mind as soon as he or she becomes part of a large, secret and powerful enterprise that can injure a lower class person at will like they were nothing but an insignificant ant.   Worms! And 3) benefited their companies**

in not having had to pay a penny of the money owed to either of the Plaintiffs. The Fifth Circuit has found **no barrier** to vicarious liability under § 1962(a) or (b), **when the principal (owner or company) has derived some benefit (profit or acquired right or privilege) from their agent's wrongful acts.** Crowe v. Henry, 43 F. 3d 198, 206 (5th Cir. 1995). **The privilege of not having had to pay either of the Plaintiffs a penny in award money was the most valued benefit.** A subsequent district court decision sought to reconcile the two decisions by construing *Schwartz* as a narrow holding limited to cases in which the corporation was unaware of its employees' misconduct, **as opposed to *Liquid Air*, in which the corporation stood by silently and benefited from the wrongdoing.** *Harrison v. Dean Witter Reynolds, Inc.,* 695 F. Supp. 959, 962 (N.D. Ill. 1988); see also *Dynabest Inc. v. Yao,* 760 F. Supp. 704, 711-712 (N.D. Ill. 1991) **(allowing Section § 1962(a and b) claims against employer based on vicarious liability where the employer benefited from the RICO violation).**

The Ninth Circuit has adopted the reasoning of *Petro-Tech* and *Liquid Air,* holding that liability may arise under § 1962(a) under respondeat superior principles **"when the individual (owner) or entity (company) is benefited by its employee or agent's RICO violations."** *Brady v. Dairy Fresh Products Co.,* 974 F. 2d 1149, 1155 (9th Cir. 1992). The Eleventh Circuit has

held that **respondeat superior liability may be imposed under §**
**1962(b), but only on those enterprises that derive some benefit**
**from the RICO violation**. *Quick v. Peoples Bank of Cullman*
*Cnty.*, 993 F. 2d 793, 797 (11th Cir. 1993).   The Third Circuit
held that **an enterprise (company) may be held vicariously liable**
**for a violation of Section § 1962(a) because that subsection of**
RICO does **not require a distinction between the person (owner)**
**and the enterprise (company)**.   *Petro-Tech, Inc.*, 824 F. 2d at
1361.    The Fifth Circuit has found **no barrier to vicarious**
**liability under § 1962(a or b) when the person (owner) or entity**
**(company) has derived some benefit from the agent's wrongful**
**acts.**   *Crowe v. Henry*, 43 F. 3d 198, 206 (5th Cir. 1995).
DeFalco v. Bernas, 244 F. 3d 286, 307, 309 (2d Cir. 2001) **(town**
**could be an enterprise)**; United States v. Warner, 498 F. 3d 666,
695-96 (7th Cir. 2007) **(recognizing that a state could be**
**considered a RICO enterprise, if only because the state is often**
**a victim of RICO schemes)**; United States v. Freeman, 6 F. 3d
586, 596-97 (9th Cir. 1993).   **Unfortunately, all of the states**
**in America have judicial enterprises in operation**.


**Employers Permit Their Lawyers to Mislead as a Form of Defense:**
In criminal law, lawyers who represent the guilty, and who are
not witnesses to the crimes committed, have to believe the facts
presented to them by their clients, even if they believe they

may have been lied to. Consequently, criminal lawyers deliberately misrepresent to jurors what they should believe as relevant in establishing a reasonable doubt defense. This is acceptable lawyer conduct when no one really knows what happened but the client. On the other hand, when a lawyer deliberately and blatantly lies about what applicable laws a judge should use in deciding a case, the lawyer has intentionally attempted to commit a fraud on the court with the judge's help. **It takes at least two (2) officers of the court, a lawyer and a judge, to commit a <u>clear and blatant</u> fraud on the court in which even the judge knows he or she has participated in honest services fraud (abuse of discretion).** At this point, the lawyer would be in violation of both the bar rules under the attorney code of conduct and the federal mail and/or wire fraud statutes, **<u>even if no injury occurred</u>. When a judge as part of an enterprise electronically files a clearly false order with the clerk of the court used as a means to officially and immediately defraud a party or parties, they have also commit wire fraud.**

When a fraud on the court has been committed by both an attorney and a judge resulting in injury, both the wrongdoers are in violation of Title 42, Chapter 21, Section 1983. And if two (2) RICO predicate acts were committed by the judge or judges as members of the state judicial enterprise, **all participants** are in violation under the RICO Act.

Finally, lawyers are <u>absolutely permitted all year round</u> by their employers to provide judges with their desired legal or illegal pleadings to rule favorably on for the employers' benefit. <u>Any greedy employer could care less if they benefited</u> <u>from racketeering, as long as the wrong committed by their</u> <u>company was seemingly passed off to the judge when he or she</u> <u>signed the false final order</u>! Right? <u>Wrong</u>! Imputation and subsequently acquiescing in by not implementing the appropriate corrective measures after having wrongly benefited by the fraud, keeps all wrong doers on the hook for damages.


**To Prevail on a Claim under Respondeat Superior:**

The plaintiff must establish "both that **(1)** an employer-employee relationship existed and **(2)** the alleged tortious conduct fell within the scope of employment." *Doe v. Medeiros*, 266 F. Supp. 3d 479, 484 (D. Mass. 2017) (citing *Dias*, 780 N. E. 2d at 450-51). **An employer's liability via respondeat superior "arises simply by the** <u>operation of law</u> **and is only derivative of the wrongful act of the employee."** *Merrimack Coll. v. KPMG LLP*, 480 Mass. 614, 108 N. E. 3d 430, 438 (2018) (quoting *Elias v. Unisys Corp.*, 410 Mass. 479, 573 N.E.2d 946, 948 (1991)). **An employer itself need not act wrongfully to be held liable for the tort of an employee committed within the scope of employment.** See id.

*Ebbe v. Concorde Investment Services, LLC*, 392 F. Supp. 3d 228 (2019).

**Imputation:**

**The law of agency establishes a set of rules for determining when, in relation to third parties, an agent's conduct or knowledge should be imputed to his or her principal.** See Restatement (Third) of Agency §§ 2.01 - 2.04, 5.03 (2006). For example, **in transactions with third parties, an agent's conduct will be imputed to the principal, if the agent acted with actual or apparent authority (attorney/client relationship), or if the principal ratified the agent's conduct.** See *Fergus v. Ross*, 477 Mass. 563, 566-568, 79 N. E. 3d 421 (2017). See also Restatement (Third) of Agency, supra at §§ 2.01 - 2.03, 4.02. **In the realm of torts, the tortious conduct committed by an agent in the scope of his or her agency will be imputed to the principal under a theory of respondeat superior.** See *Lev v. Beverly Enters.-Mass., Inc.*, 457 Mass. 234, 238, 929 N. E. 2d 303 (2010). See also Restatement (Third) of Agency, supra at § 2.04. **Knowledge that an agent acquires in the scope of his or her employment can also be imputed to the principal.** See *Sunrise Props., Inc. v. Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C.*, 425 Mass. 63, 66-67, 679 N. E. 2d 540 (1997). See also Restatement (Third) of Agency, supra at §

5.03.  *Merrimack Coll. v. KPMG LLP*, 480 Mass. 614, 108 N. E. 3d 430, 438 (2018)

**The result of imputation is that the principal bears the legal consequences of the agent's conduct.**  **Thus, if an agent with actual or apparent authority enters into a contract with a third party, the principal will be bound by that contract.**  See, e.g., *Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 4, 17, 679 N. E. 2d 191, cert. denied, 522 U.S. 1015, 118 S. Ct. 599, 139 L. Ed. 2d 488 (1997) (university bound by agreement signed by vice-president where vice-president had apparent authority). **And if an agent negligently injures a third party while acting within the scope of the agency, the principal (employer) will be held vicariously liable for that negligence.**  See, e.g., *Dias v. Brigham Med. Assocs., Inc.*, 438 Mass. 317, 323, 780 N. E. 2d 447 (2002) (corporation could be held vicariously liable for alleged medical malpractice of its physician-employee).  *Merrimack Coll. v. KPMG LLP*, 480 Mass. 614, 108 N. E. 3d 430, 438 (2018)

**Imputation serves various functions.  It creates incentives for principals to choose their agents wisely**.  See Restatement (Third) of Agency, supra at § 5.03 comment b, at 360.  **It also encourages principals to supervise their agents** and to share information with them.  Id.  **The ultimate purpose behind these rules of imputation, however, is to fairly allocate risks**

**between principals and innocent third parties.** As we explained in *Kansallis Fin. Ltd. v. Fern*, 421 Mass. 659, 664-665, 659 N. E. 2d 731 (1996).

*Kansallis*:

"Standing behind [the] diverse concepts of vicarious liability is a principle that helps to rationalize them. This is the principle that as between two innocent parties -- the principal-master and the third party -- **the principal-master who for his own purposes, places another in a position to do harm to a third party should bear the loss. A principal who requires an agent to transact his business, and can only get that business done if third parties deal with the agent as if with the principal, cannot complain if the innocent third party suffers loss by reason of the agent's act. Similarly, the master who must put an instrument into his servant's hands in order to get his business done ... must also bear the loss, if the servant causes harm to a stranger in the use of that instrument as the business is transacted." (Citations omitted.)** *Merrimack Coll. v. KPMG LLP*, 480 Mass. 614, 108 N. E. 3d 430, 438 (2018).

**Vicarious Liability under the Respondeat Superior Doctrine:**
A wrongdoing is never really within the scope of an employee's employment: If a wrongdoing were, then the employer's liability

would be direct, not vicarious.  See Restatement (Second) of Agency, § 212 Comment a; cf. *Pomer v. Deere Co.*, 875 F. 2d 1262, 1266 (7th Cir. 1989).  **In determining whether an employer is liable for the wrongdoing of an employee, the analysis becomes one of degree:  Just how related must the wrongdoing be to the nature of the employee's work before the wrongdoing itself falls within the scope of the employment?**

**The general rule is that an employee acts within the scope of his employment for respondeat superior purposes when his conduct "(a) . . . is of the kind he is employed to perform; (b) . . . occurs substantially within the authorized time and space limits; [and] (c) . . . is** actuated, at least in part, **by a purpose to serve the master. . . ."** Restatement (Second) of Agency, § 228; Prosser on Torts, supra, § 70 at 502.

§ 229 of the Restatement provides that **an act is of the kind an employee was hired to perform, if the act is similar to those he was authorized (permitted within the scope of employment) to do and inter alia (out of many other acts), <u>if the employer "has reason to expect that such an act will be done</u>."** Restatement (Second) of Agency, § 229(f); see *Rosenthal Co. v. Commodity Futures Trading Commission*, 802 F. 2d at 968-69.  **Thus, an act may be within the scope of employment even if it was specifically prohibited by the employer.**  Restatement (Second) of Agency, § 230 **("An act, although forbidden, or done in a**

**forbidden manner, may be within the scope of employment.");** see
*Marbury Management, Inc. v. Kohn*, 629 F. 2d 705, 716 (2d Cir.
1980). *Harrison v. Dean Witter Reynolds, Inc.*, 695 F. Supp.
959, 962 (N. D. Ill. 1988).

Under settled principles (agreement in principle) of respondeat
superior, **an employee who does what he is authorized (permitted**
**within the scope of employment) to do, binds his employer even**
**if the employee acts with an improper purpose and ultimately**
**cheats both his employer and the third person.** Restatement
(Second) of Agency § 165, Comment e; id. at § 257, Comments a,
d; see Congregation of the Passion, *Holy Cross v. Kidder Peabody*
*Co., Inc.*, 800 F. 2d 177, 184 (7th Cir. 1986). *Harrison v. Dean*
*Witter Reynolds, Inc.*, 695 F. Supp. 959, 962.


**Subsequently Acquiesced in by an Employer after an Injury has**
**Occurred:**

**A lawyer (officer of the court) is in the purview of his**
**authority to provide the government function of submitting**
**knowingly false pleadings that the court wants and needs to**
**illegally rule on in furtherance of their employer's interests.**
**Even if the employee's acts result in racketeering and are not**
**immediately foreseeable to the employer, they will be after the**
**fraud has been committed and an injury has resulted. The**
**employer will receive the blatantly false final order by**

imputation, but in turning a blind eye to the injury caused by their employee's fraud, they have permitted the fraud to stand. This wrongful conduct by an employer after the fact makes them guilty under vicarious liability for injuries sustained as if they had permitted the fraud beforehand.

A fraud permitted to stand by an employer after it has knowingly benefited by the fraud, is just as much wrong as an employer permitting a fraud to be committed by an employee before being benefited.

Consequently, all third enterprise employees' fraudulent actions were subsequently acquiesced in by their employers (Defendants) making them liable for their employees' wrongful acts. *Quick v. Peoples Bank of Cullman Cnty.*, 993 F. 2d 793, 797 (11th Cir. 1993).

Under general agency rules, a corporation (principal) will be vicariously responsible for the wrongful acts of its employees or agents when the acts are: (1) related to, and committed within, the course of employment; (2) committed in furtherance [of the business] of the corporation; and (3) authorized either before, or subsequently acquiesced in after, an injury by the corporation. Id. at 1306, citing 10 W. Flectcher, Cyclopedia of the Law of Private Corporations § 4942, at 664 (1986).

In *Quick v. Peoples Bank of Cullman Cnty.*, 993 F. 2d 793, 797 (11th Cir. 1993), these three elements bring us to the Bank's

second argument on appeal. The Bank argues that even if respondeat superior is applicable, *Buckelew* was not acting within the scope of his employment, but instead was acting for personal motives contrary to the Bank's interest; therefore, the Bank is not subject to liability. This argument amounts to a challenge to the sufficiency of the evidence supporting the jury's verdict regarding vicarious liability. When reviewing such a challenge, "[t]he question is whether or not reasonable jurors could have concluded as this jury did based upon the evidence presented." *Griffin v. Swim-Tech Corp.*, 722 F. 2d 677, 679 n. 1 (11th Cir. 1984). We conclude that the jury's findings here meet this standard. The *Quicks* presented evidence that *Buckelew's* activities were incident to his assigned duties and took place at the Bank during business hours. This evidence establishes the <u>first element — that *Buckelew's* activities were related to and committed within the course of his employment</u>. As to the <u>second element, *Buckelew* had been assigned the function of making loans, and his activities did further that aspect of the Bank's business</u>. To counter this assertion, the Bank argued that *Buckelew* engaged in these activities in violation of the Bank's conflict-of-interest policy. The *Quicks*, however, presented convincing evidence that the policy was unwritten, that it had not been enforced in the past and that *Buckelew* was unaware of it. We thus conclude that there

was sufficient evidence to support a finding that *Buckelew's*
activities were committed in furtherance of the Bank's business.
Regarding the third element, the Bank did not expressly
authorize Buckelew's activities, but there is evidence of
acquiescence. Though there is conflicting testimony on the
point, the jury was entitled to infer that the Bank acquiesced
in *Buckelew's* activities by requesting that the *Quicks*: (1) sign
a consolidation note that included amounts fraudulently taken by
*Buckelew*, (2) sell their inventory to reduce that indebtedness,
(3) not say anything to anyone about *Buckelew's* activities, and
(4) not deal with anyone besides Cummings and Nails. Thus, there
was sufficient evidence (knowledge of the fraud after the fact)
for a reasonable jury to find that *Buckelew's* activities were
subsequently acquiesced in by the Bank. *Quick v. Peoples Bank
of Cullman Cnty.*, 993 F. 2d 793, 797 (11th Cir. 1993).
Hindsight is always 20/20. Any agent who supposedly did not
understand parts of the Plaintiff's or Plaintiffs' complaints
should have simply asked for clarification on the subject, but
all of the employees and agents working for the Defendants in
Section 2 only solicited the judge or judges for the illegal
dismissal of the case or cases with prejudice, using blatantly
obvious inapplicable statutes and case laws for doing so in
order to wrongly benefit! Blatant solicitations to racketeer!

**Section 3**.  All state **entities** (municipalities) named in this Section can be **sued either in state court** for any one of their employees having committed a negligent or intentionally tort while acting within the scope of his or her employment which **1)** breached a state government policy.  Or they can be **sued in federal court** for having **2)** implemented a state government policy in violation of their duty to the public under the U.S. Constitution.  Using the second one of these two (2) methods for receiving compensation for damages, there were violations of the following federal statutes:  <u>**1. (Title 18, Chapter 13, U.S. Codes § 241 & 242)**</u> and <u>**2. (Title 42, Chapter 21, Section 1983)**</u>.

<u>**A municipality is a proper defendant under Title 42, Chapter 21, Section 1983**</u>**, where the conduct complained of relates to an official municipal policy, custom, or practice causing the U.S. constitutional tort.**  *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018 (1972).  <u>**This is excluding a victim having been injured in an action at law (a court case)**</u>.  **Punitive damages and attorney's fees are owed for common law frauds and breaches of fiduciary duties to the public by municipalities.  "A public official, acts as trustee for the citizens and the State ... and thus owes the normal fiduciary duties of a trustee, e.g., honesty and loyalty to them."**  *United States v. Kincaid–Chauncey*, 556 F. 3d 923, 939 (9th Cir. 2009) (quoting *United States v. Silvano*, 812 F. 2d 754, 759 (1st Cir.

1987) and *United States v. Mandel*, 591 F. 2d 1347, 1363 (4th Cir. 1979) (internal quotation marks omitted)). **Although the Plaintiff cannot sue the municipalities in this Section under the RICO Act, but only in federal court under Section § 1983,** in general, a breach of fiduciary duty is not considered a necessary element for a mail or wire fraud conviction **proceeding on an honest services theory, but their** intent **as a participant does under the Pinkerton Liability Doctrine used in Section § 1962(d).** See *United States v. Ervasti*, 201 F. 3d 1029, 1036 (8th Cir. 2000). In Bridge v. Phoenix Bond & Indemnity Co., the Supreme Court held that where the alleged mail or wire fraud scheme is not based on misrepresentations or omissions in particular mailings or wirings, the plaintiff need not show that it relied on the mailings or wirings asserted as predicate acts. *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 659-61 (2008). **One court has held that while innocent mailings may be used to further a mail fraud scheme, they might not count as predicate acts toward establishing a pattern of racketeering unless they contain** misrepresentations. See *Wisdom v. First Midwest Bank, of Poplar Bluff,* 167 F. 3d 402, 407 (8th Cir. 1999).

Monetary compensation with punitive damages were owed to the Plaintiff by the municipality accomplices cited below when they violated both the Plaintiff's and decedent's state and federal

substantive due process rights with injuries. Thus these four (4) municipalities, through their employees, illegally and deliberately cost the Plaintiff his owed money under the Florida Slayer Statute 732.802 and the legal right to make claim to his gift deed, both property interests. **The four (4) municipalities below are not being sued in this Section for any actions taken by their employees that were part of a corrupt enterprise's plan to commit or cover-up racketeering activities that damaged the Plaintiff and decedent while at work being paid by their employer.**

As for individuals in violation of government policy, where there are operational decisions made as to how policies will be implemented, there is **no** state governmental sovereign immunity from suit. Only basic state government policy decisions are immune from suit. A state government that has discretionary policy decisions in place pertaining to a matter, has immunity from suit that pertains to that matter **(if not in violation of federal constitutional rights),** but subsequent actions undertaken to implement basic policy decisions are considered ministerial acts for which liability attaches. **There are no discretionary state policy decisions in place that allows any government agency to violate U.S. statutes or common laws in order to violate its citizen's rights that are not void of the authority to do so, just illegal made up policies by crooked**

government employees.  <u>And the federal statute of limitations in</u> <u>a circuit may be tolled permanently on acts to defraud and</u> <u>deprive a plaintiff of his civil rights done in conjunction with</u> <u>committing a fraud on the court or being an accessory after the</u> <u>fact in a murder under Title 18, U.S. Code § 3</u>.

The municipalities/accomplices are:    **1) Florida Governor's Office**, for Rick Scott <u>making it the policy of the governor's</u> <u>office not to investigating a murder, from 2016 to present,</u> at least for the Plaintiff and decedent <u>(punitive damages are</u> <u>allowed under Section § 1983);</u> 2) Hillsborough County Sheriff's Office (HCSO), for David Gee, Chad Chronister, Jason Gordillo & Christopher Brown <u>making it the policy of HCSO not to</u> <u>investigating a murder, unless the county coroner's office</u> <u>states that one has been committed, from 2016 to present</u>, at least for the Plaintiff and decedent <u>(punitive damages are</u> <u>allowed under Section § 1983);</u> 3) Hillsborough County Coroner's Office, <u>an accomplice</u> to HCSO, for deliberately stating an inaccurate reason for the decedent's cause of death, allowing HCSO to <u>impose their fraudulent policy</u> of not being required to investigate the decedent's murder (compliments of Mary Mainland, from 2016 to present with punitive damages allowed); 4) Florida Attorney General's Office, for Pamela Bondi from 4/2015 to 2019, Chesterfield Smith from 2017 to present and Jack Hagadorn from 4/2015 to present, <u>making it the policy of the attorney</u>

general's office not to investigate a murder or refer one to another government agency, at least for the Plaintiff and decedent (punitive damages are allowed under Section § 1983).

Florida's 13th Judicial Circuit can continue to be sued by the Plaintiff in state court for breaching a state government policy pertaining to slandering a party per quod when its employees tortiously interfered (inducement) in the Plaintiff court case 14-CA-10278 (intentional tort lawsuit), on 1-6-15, by committing a fraud on the court, to stop a judicial investigating by Bernard Silver into the decedent's murder while becoming accessories after the fact to it, to succeed in monetarily damaging the Plaintiff (compliments of Manuel Menendez and Kimberly Cash).  Punitive damages are allowed.

Manuel Menendez and Kimberly Cash, former or current 13th Judicial Circuit's employees and officers of the court, can be sued in federal court for racketeering under Title 18, Chapter 96, Codes § 1961-1968) done in conjunction with having committing a 1) fraud on the court while violating Title 18, U.S. Code § 3 in conjunction with a 2) murder under Section § 1959.  Both of which have no statute of limitations.


Fraud on the Court:

Under FRCP Rule 60(b), a final judgment may be set aside based on the fraud or misrepresentation of an adverse party.

Ordinarily, a Rule 60(b) motion must be brought within one year of judgment. One exception is the more serious 'fraud on the court,' which has no statute of limitations. "Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kenner v. C.I.R.*, 387 F. 3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23.

In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted." Common law dictates there is no distinction between state and federal courts during the commission of a fraud on the court.

Fraud on the court occurs when an officer of the court is involved in the perpetration of a fraud or makes material misrepresentations to the court. Fraud upon the court makes void the orders and judgments of that court. When an officer of

the court is found to have fraudulently presented facts to impair the court's impartial performance of its legal task, the act (known as fraud upon the court) <u>is not subject to a statute of limitation</u>.

**Further Analysis of the Statute of Limitations under Title 42, Chapter 21, Section 1983 or the RICO Act:**

There is no statute of limitations contained within the language of 42 USC § 1983. The United States Supreme Court has directed that 42 USC § 1983 "requires courts to borrow and apply to all § 1983 claims the one most analogous state statute of limitations." *Owens v Okure*, 488 US 235, 240 (1989). Federal courts adjudicating civil rights claims under 42 U.S.C. § 1983 **must borrow the state statute of limitations applicable to personal injury actions under the law of the forum state (state where the lawsuit is brought)**. *United States Supreme Court, Wilson v. Garcia* (1985), No. 83-2146.

**Thus, in Portland, Maine, Section 1983 actions must be brought within six (6) years from the date the cause of action accrued,** <u>**unless tolled due to 1) concealment fraud, 2) having been misled (deception), 3) Continuing Violation or Last Predicate Act Rules, 4) fraud on the court (misrepresentation) or 5) a murder. Both of the two (2) last reasons have no statute of limitations in any U.S. forum**</u>. Fraudulent concealment occurs when a

defendant engages in a misleading, deceptive or contrived action in an attempt to conceal a plaintiff's recognizing a possible cause of action.   In any case:   **All Title 42, Chapter 21, Section § 1983 actions by the municipality accomplices started to accrue around mid. 2015.**

**The 13th Judicial Circuit:**

The 13th Judicial Circuit committed a fraud on one of its own courts through Kimberly Cash **(an officer of the court)** around 1-6-15, to mislead the Plaintiff into believing that Manuel Menendez and herself were **not** part of Bernard Silver's gang out to deprive him of his civil rights under the RICO Act.   David McClain stated in court on 7-14-17, during his motion to dismiss case 17-CA-902, filed on 2-28-17 with Kimberly Cash's affidavit, that Kimberly Cash was just **concerned for Bernard Silver's wellbeing (within the scope of employment), which prompted her to slander the Plaintiff with Bernard Silver.**   This stopped the Plaintiff from knowing that the real reason for the deliberate judicial defrauding rendered (2-6-15) on him by Bernard Silver (illegal final order), was for racketeering purposes confirmed by the Plaintiff on 5-18-16.   On 2-6-15 is when the statute of limitations started to accrue for suing the 13th Judicial Circuit for its employees deliberately slandering the Plaintiff per quod, in breach of state government policies, without it having

committed a **1) fraud on the court while violating** Sections §
1983, 1962(c), 241 & 242, with the intent of **2)** covering up the
decedent's murder under Code § 3. **Consequently, because the
final ruling during case 14-CA-10278 should be null and void
(set aside) due to a fraud on the court, the Plaintiff could try
to have this done either at the local state appellate court or
the local federal court under Section § 1983.** But the Plaintiff
cannot in good conscious sue the 13th Judicial Circuit again for
simply breaching state policy during the scope of their
employment for slander per quod in state court when Kimberly
Cash and Manuel Menendez were not acting within the scope of
their employment when they were actually racketeering. They can
on the other hand be sued in this court for violating either
federal (excess of $75,000) tortious inference laws, the RICO
Act or Section § 1983 when they went outside the scope of their
employment as officers of the court to deliberately defraud and
deprive the Plaintiff and decedent out of their state and
federal civil rights in this matter.


**The Hillsborough County Coroner's Office:**

The Plaintiff contacted the local coroner's office on 4-24-15
and spoke with the coroner, Mary Mainland, explaining to her
that the decedent died from sever sepsis and/or septic shock per
Florida Hospital in Tampa, Florida, which was due to abuse and

neglect, not from natural causes.  Mary Mainland stated that she did not know this and was going to order and review all of the decedent's medical records from her doctor's office visits leading up to her death **(there were none)** and change her cause of death with this agency to undeterminable.  This never happened with spoliation of the decedent's medical evidence.  And HCSO continued to refuse to investigate the decedent's death unless **their coroner** stated that the decedent's cause of death was not from natural causes.  Unknown to the Plaintiff until about 1-1-16, HCSO had asked the coroner not to change the decedent's cause of death.  Consequently, the Plaintiff was deliberately lied to (misled) and the decedent's civil rights were deprived from her under Title 42, Chapter 21, Section 1983 by Mary Mainland around 1-1-16.  This is when the statute of limitations started to accrue for suing Hillsborough County Coroner's Office under Section § 1983 **for complying with HCSO's illegal policy as their accessory** without using a fraud on the court or a murder cover-up to toll the statute of limitations.


**As for the Florida Governor's Office, Hillsborough County Sheriff's Office and the Florida Attorney General's Office:**
All three (3) of these agencies (secondary enterprise) have their own **made up** policy of violating their fiduciary duty to

its citizens by **implementing their own state government policies** in violation of their fiduciary duty to the public under the U.S. Constitution **whenever desired**!

These illegal actions by Florida agencies are **ongoing** violations of Title 42, Chapter 21, Section 1983.   1-1-2016 is when the statute of limitations started to accrue for the Plaintiff suing these government agencies under Section § 1983, without using a fraud on the court or a murder cover-up to toll the statute of limitations, committed in conjunction with violating their duty to the public under the U.S. Constitution.


**Section  4.**    All   state   and   federal   employees   (secondary enterprise), either past or present employees of the government, other than officers of the court, in their individual capacities during the course of their official capacities, can be sued under the Civil RICO Act for having participated in violation of **1) (Title 18, Chapter 96, Codes § 1961-1968)**, **2) (Title 18, U.S. Code § 3)**, **3) (Title 18, Chapter 63, U.S. Codes § 1341, 1343 & 1346)**, **4) (Title 42, Chapter 21, Section 1983)**, **5) (Title 18, Chapter 13, U.S. Codes § 241 & 242)** and **6) (Respondeat Superior Doctrine)** in which together these state and federal government actors deprived the Plaintiffs and decedent of their civil rights.**

Substantive exceptions do exist to hold supervisory authority liable for the torts of their employees. The first such exception arises when the supervisory authority is **acting negligently in the hiring and/or appointment of an employee.** (*Baisely v. Henry* (1921) 55 Cal. App. 760, 763-764.) This negligence would subject a supervisor to **personal liability** (non-company lawsuit) for their actions. This situation commonly arises when a supervisor has some connection, involvement, or knowledge of the wrongful acts of the employee. **The authority of a supervisor may be so expansive, that their actions align more similarly with that of a principal, thus subjecting them to liability.** Thus, a supervisor that has **prior knowledge** of certain propensities of an employee who **authorizes, ratifies, or cooperates** in such conduct may be personally liable for his own wrongful actions.

Triple remedial damage amounts and attorney's fees with a lodestar multiplier could be demanded, but under Section § 1983, regular damages along with punitive amounts and attorney's fees could be asked for instead, when the accomplices in this section either directly implemented and/or assisted in (even by turning a blind eye to) under Title 18, U.S. Code § 3, the racketeering activities of the three (3) local enterprises under **(Title 18, U.S. Code § 1961(1))**, but not limited to **1)** murder (Title 18, Section § 1959), **2)** extortion (Title 18, Section § 880), **3)**

extortionate credit transactions (Title 18, Sections § 891-894), **4)** influencing the operations of an employee benefit plan (Title 18, Section § 1954), **5)** money laundering under (Title 18, Section § 1956), first committed by Robert Foster when he illegally dismissed a lis pendens knowing that the $65,000 less than the fair market value proceed amount of $165,000 from the sale of the murdered decedent's home, was going to her murderers who forged her signature on the sales contract before her death and **6)** wire and/or mail fraud used to implement honest services fraud under Title 18, Sections § 1341, 1343 & 1346 for the purposes of defrauding the Plaintiffs and decedent out of their state and federal substantive due process rights (civil rights) when they were required by law to act appropriately, but instead managed and controlled the RICO predicate acts committed under **(Title 18, Chapter 96, Section 1962(b))**, and/or participated in the RICO predicate acts under **(Title 18, Chapter 96, Section 1962(c))**, for the purposes of **A)** monetarily damaging the Plaintiffs' business and/or property interests by having directly, or indirectly, participated in the solicitation of the courts to launder money owed to the Plaintiffs under Title 18, Chapter 95, Section 1956 and to **B)** cover-up the prior racketeering activities committed by the three (3) local enterprises. These accomplices are: **1) Rick Scott under Section § 1962(b) by having a fiduciary duty to act**

appropriately when given constructive notice of a murder by USPS certified mail, 70182290000075887042; 2) Chad Chronister under Section § 1962(b) by having a fiduciary duty to act appropriately when given constructive notice of a murder by the contents of two (2) subpoenas served on him in 2018; 3) Christopher Brown and 4) Jason Gordillo in 2018, under Section § 1962(c) by having had a fiduciary duty to act appropriately when given constructive notice of a murder; 5) James Previtera during 3/2012, under Section § 1962(b & c), <u>who benefited from satisfaction in having caused all of the illegal court case racketeering activities on the Plaintiffs and decedent</u>; 6) David Gee from 2/2012 to 9/2017 under Section § 1962(b), Respondeat Superior to James Previtera, for knowingly participating in James Previtera's illegal racketeering activities on the Plaintiff and decedent with a fiduciary duty to act appropriately; 7) Mary Mainland under Section § 1962(c), with a fiduciary duty to act appropriately when given constructive notice of a murder by phone on 4-24-15; 8) Stephen Muldrow under Section § 1962(b), with a fiduciary duty to act appropriately when given constructive notice in 6/2017 of a murder cover-up by HCSO, Defendant; 9) Pamela Bondi under Section § 1962(b) by having a fiduciary duty to act appropriately when given constructive notice of both a murder by USPS certified mail 7017-3380-0000-5200-3137 and the defrauding of Ms. Kimball by

USPS Certified mail 7018-1130-0001-3829-4635; 10) David Bowdich under Section § 1962(c), with a fiduciary duty to act appropriately when given constructive notice of a murder, Defendant; 11) Christopher Wray under Section § 1962(c), for being liable under the Respondeat Superior Doctrine, is responsible for David Bowdich's failure to act appropriately after given constructive notice of U.S. civil rights violations by USPS priority mail, 9505515441348205297578 and USPS certified mail, 70183090000099211471 in that, by beyond reasonable doubt evidence, Christopher Wray was informed by imputation from David Bowdich of the Plaintiff's matter and his anticipating the appropriate action to be taken by the Federal Bureau of Investigation (FBI); 12) Kellyanne Conway under Section § 1962(c), with a fiduciary duty to act appropriately when given constructive notice by email and USPS certified mail, 70173380000052003847 of a murder, Defendant; 13) Donald Trump under Section § 1962(c), with a fiduciary duty to act appropriately when given constructive notice by email and USPS certified mail, 70183090000025296800 of a murder and for being liable under the Respondeat Superior Doctrine for at least Kellyanne Conway's failure to act appropriately after she was constructively notified of numerous U.S. civil rights violations. By beyond reasonable doubt evidence, Donald Trump was informed by imputation from kellyanne Conway and the five

(5) other Trump executives that the Plaintiff contacted, anticipating an appropriate action to be taken in this matter by the Trump Administration abiding by Section 3 of Article 2, of the U.S. Constitution (Take Care Clause) in a reasonable amount of time. Undoubtedly Donald Trump authorized Kellyanne Conway and his other executives who were all constructively notified of the decedent's murder cover-up by the Plaintiff, to turn a blind eye to the incident <u>as a benefit in not having to embarrass and punish any of his affiliates and allies in government positions, supporting and covering for Donald Trump's administration when needed</u>, or the Plaintiff would have been notified of the Trump Administration's willingness to comply with the Plaintiff's many constructive notices given to White House executives within 30 days (reasonable amount of time). Since Donald Trump and his team of crooked government employees (Trump Administration), subsequently acquiesced in righting the wrong (fraud) committed on the Plaintiff and decedent by his affiliates within local government agencies, he is now liable, along with the 12 cited Defendants, for triple remedial damages owed in this matter, under the Civil RICO Act, for being just another dirty accomplice.

Further Analysis of the Ultimate Facts and Laws Supporting the Counts of Section 4:

**In Section 3 of Article 2 of the Constitution is the <u>Take Care</u> <u>Clause</u> that requires the U.S. president and his <u>administration</u> to obey and enforce all laws of the land,** though they retain some discretion in interpreting the laws and determining how to enforce them, **but not by turning a blind eye and ignoring the**m! *Ex parte Young* exception to Eleventh Amendment immunity applies to suing government participants under the RICO Act for damages when they violated a U.S. constitutional law.  In general, a participant under this exception is someone who **1)** was informed of the illegal act either because their job duties and position required him or her to have this knowledge, **or 2) were given either constructive or actual notice of the violation.**  And who also **3)** had a fiduciary duty as a government employee to take the appropriate actions towards enforcement of the penalties in a U.S. civil rights violation committed on one of his or her citizens, but deliberately turned a blind eye to the crimes under Title 18, U.S. Code § 3, making him or her liable under both Title 18, Chapter 96, Section 1962(d & c).  A violation of Section § 1962(d) for having known of the act that was committed, and a violation of Section § 1962(c) when the same act had foreseeably occurred **again in the future** by the same, or an affiliated party or parties.  **<u>This means that the accomplices</u> <u>cited in Section 4 were all part of future RICO predicate act</u> <u>committed simply by knowing what the basics of the RICO plan</u>**

**were that had been implemented and then turning a blind eye to it, aiding and abetting this plan to continue to defraud and deprive the Plaintiff and decedent out of their civil rights with business and/or property damages**.

For a § 1962(d) conspiracy claim based on an agreement to violate § 1962(c), the defendant need not agree to operate or manage the enterprise.  See *Salinas v. United States*, 522 U.S. 52, 63 (1997) **(holding that "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense.").  Rather, the defendant may be liable, if it (he or she) knowingly agrees to facilitate others who operate or manage the enterprise.**  For example, in *Brouwer v. Raffensperger*, Hughes & Co., 199 F. 3d 961 (7th Cir. 2000).  See also *MCM Partners, Inc.*, 62 F. 3d 967; *United States v. Quintanilla*, 2 F. 3d 1469, 1485 (7th Cir. 1993); *United States v. Starrett*, 55 F. 3d 1525, 1547-48 (11th Cir. 1995); *Tonnemacher v. Sasak*, 859 F. Supp. 1273, 1277-78 (D. Ariz. 1994); *Fid. Fed. Sav. & Loan Ass'n*, 830 F. Supp. at 261 and *Jones v. Meridian Towers Apartments, Inc.*, 816 F. Supp. 762, 772-73 (D.D.C. 1993).  The Seventh Circuit reconciled a perceived conflict between the Supreme Court's opinions in *Salinas and Reves* by holding that to be actionable, the agreement need **not** be to manage the enterprise, **but to "facilitate the activities of those who do."** *Brouwer*, 199 F. 3d

78

at 967.   The Third Circuit has similarly held that a **"defendant may be held liable for conspiracy to violate § 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise."** *Smith v. Berg,* 247 F. 3d 532, 538 (3d Cir. 2001).   Under *Brouwer v. Raffensperger, Hughes & Co.,* 199 F. 3d 961, 967 (7th Cir. 2000). All of the Defendants listed in Section 4, **1)** participated in the RICO predicate acts committed by at least not having taken any action to stop the foreseeable acts from continuing in the future with a fiduciary duty to stop and enforce the penalties of the acts and **2)** who knew what the nature (purpose) of the RICO plan was.   **The court emphasized that "one who opts into or participates in a conspiracy is liable for the acts of his [or her] co-conspirators which violate [S]ection 1962(c), <u>even if the defendant did not personally agree to do, or to conspire with respect to, any particular element.</u>"** *Smith v. Berg,* 247 F. 3d 532, 534 (3d Cir. 2001), *Id.* at 537, see also *Connecticut General Life Ins. Co. v. New Images of Beverly Hills,* 257 F. App'x 49 (9th Cir. 2007).   **The Second Circuit, also looking to Salinas, concluded that <u>proof that an enterprise was actually established is not necessary for a conspiracy</u>.** *United States v. Applins,* 637 F. 3d 59, 75 (2d Cir. 2011).   According to the Fourth and Fifth Circuits, **the plaintiff must prove only that the "defendant <u>participated in the conspiracy with knowledge of</u>**

**the essential nature of the plan**." *United States. v. Tillett*, 763 F. 2d 628, 632 (4th Cir. 1985); *United States v. Elliott*, 571 F. 2d 880, 903-04 (5th Cir. 1978). **It is "not necessary to prove that the defendant knew all of the details of the unlawful enterprise or the number or identities of all the co-conspirators**." *Dale v. Frankel*, 131 F. Supp. 2d 852, 860 (S.D. Miss. 2001) (quoting *United States v. Posada-Rios*, 158 F. 3d 832, 858 (5th Cir. 1998)).

The *Bloch* court relied upon a footnote from *Petro-Tech* which stated that **"there could be circumstances in which the common law of respondeat superior would hold an employer (company) liable even when the employer did not benefit from the employee's conduct**." (owners benefiting not the company). *Bloch v. Prudential-Bache Securities*, 707 F. Supp. at 193, quoting *Petro-Tech, Inc.*, 824 F. 2d at 1359 n. 11. **Not punishing affiliate enterprise members on government payrolls, who keep your secrets safe while they violate your citizens' rights for profit or gain, is one crooked president going along, to get along!**

**Section 5.** All private party accomplices which include attorneys and non-officers of the court, law firms, P.A.s and P.C.s, as participants of the primary, secondary and third enterprises, participated in violation of **(Title 18, Chapter 96,**

**Codes § 1961-1968)**, **(Title 42, Chapter 21, Section 1983)**, **(Title 18, Chapter 13, U.S. Codes § 241 & 242)**, **(Title 18, U.S. Code § 3)** and **(Fraud on the Court)** by providing the government function of filing knowingly false pleadings, even as joinders, for courthouse judges to illegally grant, for the purpose of defrauding and depriving the Plaintiffs and decedent under **(Title 18, Chapter 63, U.S. Codes § 1341, 1343 & 1346)**. Triple remedial damage amounts and attorney's fees with a lodestar multiplier could be demanded, but under Section § 1983, regular damages along with punitive amounts and attorney's fees could be asked for instead, when the accomplices in this Section either directly implemented, and/or assisted in (even by turning a blind eye to) under Title 18, U.S. Code § 3, the racketeering activities of the three (3) local enterprises under **(Title 18, U.S. Code § 1961(1))**, but not limited to **1)** murder (Title 18, Section § 1959), **2)** extortion (Title 18, Section § 880), **3)** extortionate credit transactions (Title 18, Sections § 891-894), **4)** influencing the operations of an employee benefit plan (Title 18, Section § 1954), **5)** money laundering under (Title 18, Section § 1956), first committed by Robert Foster when he illegally dismissed a lis pendens knowing that the $65,000 less than the fair market value proceed amount of $165,000 from the sale of the murdered decedent's home was going to her murderers who forged her signature on the sales contract before her death

and **6)** wire and/or mail fraud used to implement honest services fraud under Title 18, Sections § 1341, 1343 & 1346 for the purposes of defrauding the Plaintiffs and decedent out of their U.S. civil rights when they were required by law to act appropriately, but participated under **(Title 18, Chapter 96, Section 1962(c))**, for the purposes of the following: **A)** covering up the prior racketeering activities that were committed by the three (3) local enterprises and **B)** monetarily damaging the Plaintiffs' business and/or property interests by soliciting the judges to launder money owed to the Plaintiffs under Title 18, Chapter 95, Section § 1956. Together, all of the accomplices cited in this Section are guilty of having taken measures to facilitate continued RICO predicate act violations on the Plaintiffs' and decedent's, violations of their state and federal substantive due process rights (civil rights), when they were legally required by law, some as officers of the court, to act appropriately, but by beyond reasonable doubt evidence, **1)** knew that the nature of the RICO plan was to illegally end the Plaintiffs' cases, monetarily damaging them and **2)** participated in the illegal RICO plan by filing knowingly false pleadings, even as joinders, that allowed the judges the opportunity to implement their RICO plan, illegally ending the Plaintiffs' cases. The filing of knowingly false pleadings by licensed attorneys is also a violation under the Florida Bar's Code of

Conduct.    In  Supreme  Court  of  Florida,  *The  Florida  Bar  v.*
*Whitney*, 132 So. 3d 1095, No. SC11-1135 (2013) cites The Florida
Bar  Rules:    4-3.3(a)  (**"A lawyer shall not knowingly: <u>4-3.3(a)</u>**
**<u>(2) fail to disclose a material fact to a tribunal when</u>**
**<u>disclosure is necessary to avoid assisting a criminal or</u>**
**<u>fraudulent act by the client, or other party to the case</u>;**   4-
3.4(c)  **(a lawyer shall not knowingly disobey an obligation under**
**the rules of a tribunal) (if not fraudulently illegal);**  (4)
**permit any witness, including a criminal defendant, to offer**
**testimony or other evidence that the lawyer knows to be false.**
**<u>4-8.4(c)  (a lawyer shall not engage in conduct involving</u>**
**<u>dishonesty, fraud, deceit, or misrepresentation</u>);**  and  **<u>4-8.4(d)</u>**
**<u>(a lawyer shall not engage in conduct in connection with the</u>**
**<u>practice of law that is prejudicial to the administration of</u>**
**<u>justice</u>).**  Together the lawyer accomplices in this Section
violated  **<u>all</u>**  of the underlined Florida Bar Rules cited.    The
accomplices are:  **Robert Welker (in cases 12-CP-1669, 14-CA-**
**10278, 16-CA-4693, 2D17-2243, Florida SC18-590, U.S. SC17-9268**
**and 17-CA-4051), Steven Hearn (in cases 12-CP-1669, 2D17-2725,**
**17-CA-4051, 2D18-1538, 2D18-1889 and 2D19-1384, Frederick Hearn**
**(in case 17-CA-4051 and 2D19-1384), Steven Hearn P.A., (in cases**
**2D17-2725, 17-CA-4051, 2D18-1538, 2D18-1889 and 2D19-1384, Bowen**
**Brown (in cases Florida SC18-590, 17-CA-4051, U.S. SC17-9268 and**
**2D19-1384), Robin Black (in case 2D17-2243), Janice Pickett (in**

case 17-CC-403) Michael D'Lugo (in cases 18-CA-1537 and 2D18-4761), Wicker, Smith, O'Hara, McCoy & Ford, P.A.; respondeat superior to Janice Pickett and Michael D'Lugo (in cases 17-CC-403, 18-CA-1537 and 2D18-4761), Lee Pearlman (in cases 12-CP-1669, 2D13-4571, 14-CA-12257, 2D18-694, 17-CA-4051 and 2D19-1384), Andrew Mallory (in case 17-CA-4051 and 2D18-1889), Denmon & Pearlman, P.A.; respondeat superior to Lee Pearlman and Andrew Mallory (in cases 17-CA-4051 and 2D18-1889), Thomas Rydberg (in cases 12-CP-1669, 2D13-4571, 14-CA-10278, 14-CA-12257, 16-CA-4693, 2D17-2243, 17-CA-4051 and 2D19-1384), Thomas Rydberg P.A.; respondeat superior to Thomas Rydberg (in case 12-CP-1669, 2D13-4571, 14-CA-10278, 14-CA-12257, 16-CA-4693, 2D17-2243, 17-CA-4051 and 2D19-1384), Michael McGirney (in cases 14-CA-12257, 17-CA-4051 and 2D19-1384), Spector Gadon & Rosen, P.C.; respondeat superior to Michael McGirney (in cases 14-CA-12257, 17-CA-4051 and 2D19-1384), Sybil Murphy (in cases 12-CP-1669, 2D13-4571, 14-CA-10278, 2D17-2725, 17-CA-4051, 2D18-1889 and 2D19-1384), Abraham Shakfeh and William Linero Jr. (in case 17-CA-6219), Butler, Weihmuller, Katz and Craig LLP; respondeat superior to Abraham Shakfeh and William Linero Jr. (in case 17-CA-6219), Joseph Riopelle and Jessica Welsh (in case 17-CA-6219 and Boyd, Richards, Parker and Colonnelli P.L.; respondeat superior to Joseph Riopelle and Jessica Welsh (in case 17-CA-6219), for the above reasons.

**Section 6.** Defendant **ABC, Inc., along with accomplices Willow Bay, Tanya Menton, Charlene Honeywell and Bernard Silver** (fourth and secondary enterprises) **violated the Plaintiff's 1st U.S. constitutional amendment right to free speech)** when **1)** Charlene Honeywell illegally defrauded the Plaintiff out of being able to file an appeal by requiring him to pay an illegal $500 filing fee, documented in the final order from case 8-17-CV-219-7-36MAP, on 5-9-17. **2)** when Bernard Silver illegally gave the Plaintiff a contempt of court ultimatum, stopping him from speaking with any courthouse employee at his judicial office on business, documented in case 14-CA-10278, on 12-18-14. And when **3)** ABC, Inc. gave the Plaintiff a do not contact Willow Bay at unaffiliated USC ultimatum by letter on 6-21-18. All of these civil rights violations were done to help **1)** cover-up the prior racketeering activities committed under Title 18, U.S. Code § 3 by the three (3) local enterprises and to **2)** cost the Plaintiff his business and property interests that are still being implemented by Florida's state judicial enterprise.

**Section 7. Sybil Murphy, Marcy McDermott and Cyrie Schneider (decedent's caretakers) can be sued under (Title 18, Chapter 96, Sections 1962(b & c))**, along with **Richard Smith and Richard Murphy** under **(Title 18, Chapter 96, Section 1962(c))** for

committing a **3)** **(Fraud on the Court)** during cases 12-CP-1669, 13-CA-10278, 17-CA-4051, 2D18-1889 and 2D19-1384, all of whom formed the **primary enterprise** under **1)** **(Title 18, Chapter 96, Codes § 1961-1968)**, when they violated **2)** **(Title 18, Chapter 95, Section 1959)** — relating to a murder by having planned and implemented the killing of the decedent under Florida's aggravated manslaughter statute 782.07; **4)** **(Title 18, Chapter 41, Section 880)** — relating to receiving the proceeds of extortion, when the three (3) caretakers made the decedent sign two (2) false inheritance instruments which were a will and a gift deed. The gift deed was a **ruse** to be given to the Plaintiff by Robert Welker after the decedent was dead, so that the Plaintiff would believe that he owned the gifted property, when he in fact does not due to the deed not having been properly served to him by the decedent while she was alive. Consequently, the ownership rights to this deeded property can be exercised at any time by either the caretakers or their heirs after the Plaintiff's death, since he currently only has squatter's rights from having both lived on the property and paid the taxes associated with it for over seven years. The death of a squatter terminates the squatter's rights to the property. **5)** **(Title 18, Chapter 42, Sections 891-894)** — relating to **extortionate credit transaction (SunTrust Bank on 6-12-12 account number 0049011229398)**. Among other properties of the decedent's stolen before her death, was

an illegal transfer of $20,000 (hush money) made to Marcy McDermott on 6-12-12, 19 days before the decedent death on 7-1-12, by Cyrie Schneider and documented in the appendices); **(Title 18, Chapter 95, Section 1959)** – relating to the three (3) caretakers' **planed series of related illegal acts** leading up to the malicious manslaughter of the decedent by having committed the following: **1)** procuring false inheritance instruments by forging the decedent's signature on Robert Welker's retainer agreement, **6) (a federal class D felony)**, **2)** substituting the decedent's pneumonia medication for an antifungal, a violation under **(Florida Statute 825.102, 732.802 and Title 18, Chapter 95, Section 1959)**, **3)** denying the decedent medical attention, a violation under **(Florida Statute 825.102, 732.802 and Title 18, Chapter 95, Section 1959)**, **4)** giving the decedent critical amounts of heart stopping potassium, a violation under **(Florida Statute 825.102, 732.802 and Title 18, Chapter 95, Section 1959)**, and **5)** moving the decedent's body to the nearest toilet to falsely have paramedics believe that she was ambulatory right before her death, and that her death occurred while she was ambulatory in the bathroom instead of laying on the sofa almost dead for days while her caretaker watched her die, a violation under **7) (25 CFR § 11.440)**. All of these illegal acts were aided and abetted by all five (5) primary enterprise members under **8) (Title 18, U.S. Code § 2)**.

Richard Smith, once a career gentleman suitor, who is believed to have only married Cyrie Schneider for her illegally planned and unfettered rights to all of the decedent's property, **was a witness to the decedent signing false inheritance instruments on 6-29-12, that by marriage, allowed him to finagle some of the decedent's loot. Cyrie Schneider had asked Richard Smith to attend the signing of the false inheritance instruments at the decedent's house on 6-29-12 to add his name to both the false will and deed instruments as a credible witness to the decedent being competent when she signed them. He was also present to put pressure on the decedent to sign the inheritance instruments.**

And Richard Murphy, husband to Sybil Murphy, a stranger to the estranged Plaintiff and decedent, considered the source from whom he had already stolen property from through his wife and **willingly funded the solicitation of multiple judges to defraud the Plaintiff and decedent under (Title 18, Chapter 63, U.S. Codes § 1341, 1343 & 1346), out of their civil rights, violations by all five (5) primary enterprise members under the following: 9) (Title 18, Chapter 13, U.S. Codes § 241 & 242), (Title 18, Chapter 96, Section 1962(d)), (Title 18, Chapter 96, Section 1962(c)), 10) (Title 18, U.S. Code § 3) and 11) (Title 42, Chapter 21, Section 1983).**

Both the related only by marriage, money hungry, thieving husbands cited in this Section are just as guilty as the principles in this matter because they were both primary enterprise members by having known what the RICO plan was **(Pinkerton Liability Doctrine)** long before the decedent was abused, neglected, exploited and murdered.   The accomplices are: **Sybil Murphy, Marcy McDermott, Cyrie Schneider, Richard Smith and Richard Murphy** for the above reasons.   <u>**All of the Section 7 accomplices can and should be prosecuted for murder**</u>!

**Further Analysis of the Ultimate Facts and Laws Supporting the Counts of Section 7, with an Added Count:**

Extortion is the violation of the free will of an individual. It is the verbal or written instillation of fear that something will happen to the victim if they do not comply with the extortionist's will (coercion).

There is also the matter of about $350,000 from around $700,000 of the decedent's cash property that the Plaintiff cannot account for.   The Plaintiff believes that the decedent's social security money (federal government welfare money) was slowly transferred directly or indirectly for decades by the decedent's degreed accountant, Cyrie Schneider, to Sybil Murphy, where it was illegally invested into her husband's, pension funds at both

the McDonnell Douglas and Lockheed Martin companies before retiring from these two companies.  These were companies that offered fantastic retirement plans, matching funds deposited and giving high rates of interest on deposited money that was never to be shared with the decedent, and was never to be accounted for in her estate.  Thus, the primary enterprise committed **money laundering** under **(Title 18, Chapter 95, Section 1956(a))** and **theft and conversion** under **(Florida Statute 772.11)**.  And if any of the decedent's **stolen** money was mailed or wired by a primary enterprise member, then the primary enterprise also committed violations under **(Title 18, Chapter 63, U.S. Codes § 1341 & 1343), in relation to money laundering and theft and conversion**. By the evidence gathered during Sybil murphy's deposition taken on 4-19-13, next to Thomas Rydberg's law firm, in the Verizon Building, Suite 1775, 201 N. Franklin Street, Tampa, FL  33602, in case 12-CP-1669, Sybil Murphy had her name on a bank account with around $160,000 in it that was the property of the decedent's when she was **1)** not trusted to hold any of the decedent's money, **2)** did not live with the decedent and **3)** did not pay any of the decedent's bills.  **It is true** that **the decedent did not herself choose to set up any banking account where the deposits upon her death were to be paid to the joint holder.  In Florida, it is a known automatic banking procedure stated on most banking registration forms that all Florida**

banks, unless stipulated to them beforehand in writing, **will pay the deposits of any joint account upon death to the surviving account holder, period.**  And the decedent was legally blind due to cataracts.  <u>This is why the caretakers needed their will instrument signed so badly by the decedent, making 1) who really owned the decedent's banking money before and after her death and 2) the fact that the decedent did not herself choose for her banking deposits to be paid to the joint account holders upon her death as an inheritance, irrelevant</u>.

Joint accounts with right of survivorship have been a frequent source of litigation in Florida.

In *Spark v. Canny*, 88 So. 2d 307 (Fla. 1956), this Court held that where a joint bank account with right of survivorship was established with the funds of one person, a gift of the funds remaining in the account at the death of the creator of the joint account was presumed, but that such presumption was rebuttable and could be overcome by clear and convincing evidence to the contrary.  In a subsequent case, **the Court held that the presumption had been rebutted by a showing that the sole intent of the person who created the joint account was to make a gift effective upon her death.**  *Chase Fed. Sav. & Loan Ass'n v. Sullivan*, 127 So. 2d 112 (Fla. 1960).  <u>We reasoned that establishment of the joint account under these circumstances was an ineffectual attempt to do that which could only be</u>

accomplished by a last will and testament. In order for the survivor to prevail, it had to be shown that the creator intended a gift inter vivos at the time the account was opened!

*In Re Estate of Combee*, 601 So. 2d 1165 (1992).

In the state of Florida, if clear and convincing evidence cannot be shown by opposing parties after the burden of proof shifts to the estate under Florida Statutes sections 658.56 and 90.304 (1987) to show that the decedent did wish for banking proceeds to go to the joint holder at the time the account was opened, then the proceeds do not pass to the joint holder upon death and are made part of the decedent's estate property to be probated.

Cited in *Caputo v. Nouskhajian*, 871 So. 2d 266 (2004). Id. At 1167 n. 2. In *Combee*. This fact was never legally allowed to be proven in case 12-CP-1669 by Robert Foster after the Plaintiff had stated it in his complaint and then mentioned it to him on 9-24-12 at the very first hearing in this court case with a court reporter present. Either there was something in the water Robert Foster was drinking, or he was a practicing member of the secondary enterprise on a mission to deprive the decedent out of her state and federal civil rights to have her stolen money looked into.

The Supreme Court of Florida, *In re Estate of Combee*, 601 So. 2d 1165 (Fla. 1992), held that, in such disputes over the inclusion

of bank accounts in a probate estate, <u>parol evidence</u> is admissible to prove the decedent's intent.

It was a well-known fact that for decades the decedent was under the assumption that if she died without anyone else's name on her bank accounts, the banks would keep her money, or there would at least be a surcharge (inheritance tax) on the balance of her bank accounts. A half a century ago, the decedent liked the high rate of interest on her money given to her by the banks, but feared them stealing her money, if given an opportunity to do so. The Plaintiff was a child at the time and did not know much about this banking rule, but it did seem possible, and what is relevant is, the decedent believed it was likely to happen.

The problem with the decedent's ignorance of the Florida banking laws meant that she then had to trust the ones whose names were on her bank accounts and certificates of deposits (CD) to <u>distribute the balance of each equally amongst her heirs</u> because 1) she never wanted a will and 2) was too incompetent to know she was being murdered by the ones named on her bank accounts!

The decedent's social security deposits were made into one (1) of her checking accounts for Cyrie Schneider, who was the decedent's trusted, degreed accountant (bookkeeper) and live in caretaker, to pay her bills with.

The $160,000 balance in one of the decedent's bank accounts that Sybil Murphy jointly owned, as stated on 4-19-13, was never disclosed to the court in case 12-CP-1669.  What this money was used for while in the hands of Sybil Murphy, was known only by the primary enterprise members with copies of the bank account number only given to Thomas Rydberg, Robert Welker and Lee Pearlman.  All of these accomplices kept the decedent's banking information hidden so **any illegal activities involving this bank account, could not be discovered and disclosed during any court case having to do with the decedent's property by the Plaintiff.** Under RICO, by assisting the client in preparing its own books and records, Justice Souter wrote, the auditor "step[ped] out of its auditing shoes and into those of management." (a violation under RICO) *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993), Id. at 190-91.  **The primary enterprise cannot be sued at this time for decedent's missing $350,000 under the money laundering statute with any related mail and wire fraud claims for lack of the spoliated evidence due to Lee Pearlman, Robert Welker and Thomas Rydberg having refused to provide the referenced $160,000 banking account information to the court during cases 12-CP-1669, 14-CA-10278, 14-CA-12257, 17-CA-4051, or to the Plaintiff, but their insurance companies can and are being sued for this money, damn it to Hell!**

The insurance companies in Section 2 are being sued by the Plaintiff for their agents deliberate **spoliation** of the decedent's banking information, stopping the Plaintiff from proving where the rest of the decedent's money went!  $23,000. deposited each year, at 10% interest, for 15 years, <u>is a lot more than $350,000</u>!  The Defendants are:  **Florida Lawyers Mutual Insurance Company (Section § 1962(b & c)), CNA Insurance Company** (Section § 1962(b & c)), and **Axis Insurance (Section § 1962(b & c)).  All three (3) of these companies were co-conspirators in the above referenced court cases, that either stopped these cases from going into the discovery phase, court case 14-CA-10278 (CNA), or illegally stopped the discovery of the decedent's $160,000 and her murder related information, court cases 14-CA-12257 and 17-CA-4051 (CNA, AI and FLMIC).**

**Section 8.   Edward LaRose** (Section § 1962(b)), respondeat superior to **Robert Morris, John Badalamenti and Morris Silberman** (secondary enterprise), are all in violation of **(Title 18, Chapter 96, Codes § 1961-1968), (Title 18, Chapter 13, U.S. Codes § 241 & 242), (Fraud on the Court)** and **(Title 18, U.S. Code § 3)**, for participating under **(Title 18, Chapter 96, Section 1962(b or c))** when they tampered with the witness Marcy McDermott giving her testimony under **(Title 18, Chapter 73, Section 1512)** by deliberately failing to reverse **Elizabeth**

**Rice's false order** that dismissed the Plaintiff's sanction and certified questions deposition motion in case 17-CA-4051, case 2D18-1889, on 5-31-18, that asked for: **1)** sanctions against **Andrew Mallory, Denmon & Pearlman P.A., a subcontracted agent for Lee Pearlman and FLMIC, Steven Hearn and Steven Hearn P.A.,** when they stopped Marcy McDermott's from answering probate related question and walking out of her deposition with Marcy McDermott on 12-05-17 at the James J. Lunsford Law Library, 701 E. Twiggs Street, Tampa, Florida 33602, **in violation of both FRCP Rules 1.310(c) and 30(c).** And **2)** for not reversing Elizabeth Rice's order dismissing the Plaintiff's motion for Marcy McDermott to be asked certified questions in her court under **Fed. R. Civ. P. Rule 32(a)(8) and 804(b)(1) of the Federal Rules of Evidence.** The accomplices are: **Edward LaRose (Section § 1962(b)), Robert Morris, John Badalamenti, Morris Silberman, Andrew Mallory, Denmon & Pearlman P.A., a subcontracted agent for Lee Pearlman and FLMIC, Steven Hearn, Steven Hearn P.A., Elizabeth Rice, Sybil Murphy (Section § 1962(b)), Marcy McDermott, Lee Pearlman and Defendant Florida Lawyers Mutual Insurance Company for vicarious liability under Respondeat Superior Doctrine in conjunction with Section § 1962(b & c) violations,** for the above reasons.

**Further Analysis of the Ultimate Facts and Laws Supporting the Counts of Section 8:**

Rule [30(c) of the Federal Rules of Civil Procedure] itself says **"Evidence objected to shall be <u>taken</u> subject to the objections,"** and Professor *Wright* says it means what it says, citing *Shapiro v. Freeman , D.C.N.Y.*, 1965, 38 F.R.D. 308, for the doctrine: **"Counsel for party had no right to impose silence or instruct witnesses not to answer, and if he believed questions to be without scope of orders, he should have done <u>nothing more than state his objections</u>."** *Wright & Miller*, Federal Practice and Procedure: Civil 52113 at 419, n. 22 (1970). **We agree.** If plaintiff's counsel had any objection to the questions under Rule 30(c), **he should have placed it on the record and <u>the evidence</u> would have been taken (by the court) subject to such objection.** *Ralston Purina Co. v. McFarland*, 550 F. 2d at 973 (4th Cir. 1977). Consequently, **all of the accomplices and the Defendant cited in Section 8 also committed spoliation of <u>evidence</u>** that was not able to be obtained on 12-05-17, in case 14-CA-12257. Certified questions needed to be asked of Marcy McDermott **with Elizabeth Rice present** in case 17-CA-4051, but Elizabeth Rice illegally objected in court to continuing Marcy McDermott's deposition on 4-24-18.


**A Deposition Taken in an Earlier Action:**

A deposition lawfully taken and, if required, filed in any federal or **state court action** may be used in a later action involving the **1) same subject matter (same issues) between the 2) same parties, or their representatives or successors in interest,** to the **3) same extent as if taken in the later action.** A deposition previously taken (in any court) may also be used as allowed by the Federal Rules of Evidence. Fed. R. Evid. 804(b)(1). A party does **not** have to satisfy both Rule 32 and Rule 804; **a party only needs to satisfy either Rule 32 or Rule 804.** *Coffee*, supra at 160. The provisions of Rule 32 and Rule 804 are cumulative. Id.

**Section 9. Elizabeth Rice** (secondary enterprise) can be sued under **(Title 18, Chapter 96, Codes § 1961-1968), (Title 18, Chapter 13, U.S. Codes § 241 & 242), (Title 42, Chapter 21, Section 1983), (Fraud on the Court)** and **(Title 18, U.S. Code § 3)**, for being a participant under **(Title 18, Chapter 96, Section 1962(c))** when she tampered with witness Marcy McDermott giving her testimony in her court, a violation of **(Title 18, Chapter 73, Section 1512),** by illegally denying the Plaintiff's sanction/deposition motion stated in Section 8, on 04-25-18, heard in her court on 4-24-18 while presiding on case 17-CA-4051. The accomplice is: **Elizabeth Rice** for the above reasons.

Section 10. **Andrew Mallory and Steven Hearn** as well as their <u>**affiliated entities**</u> associated with illegally stopping Marcy McDermott's deposition on 12-5-17, which resulted in honest services fraud by **Richard Nielsen, Elizabeth Rice, Edward LaRose** (**Section § 1962(b)**), respondeat superior to **Robert Morris, John Badalamenti and Morris Silberman**, can be sued for violation of <u>**(Title 18, Chapter 96, Codes § 1961-1968), (Title 18, Chapter 13, U.S. Codes § 241 & 242), (Title 18, U.S. Code § 3)**</u> and <u>**(Fraud on the Court),**</u> for participating under <u>**(Title 18, Chapter 96, Section 1962(c))**</u> when they continued the RICO pattern of defrauding the Plaintiff in this matter by violating <u>**(Title 18, Chapter 73, Section 1512)**</u> - relating to tampering with a **witness,** victim, or an informant, on 12-05-17, 4-25-18 and 5-31-18, that started at the James J. Lunsford Law Library, 701 E. Twiggs St., Tampa, Florida 33602. The accomplices are: **Lee Pearlman, an insured/agent of Florida Mutual Insurance Company** (**Section § 1962(b)**), **Andrew Mallory** (**Section § 1962(c)**), **Denmon & Pearlman P.A., a subcontracted agent for Lee Pearlman and FLMIC, Steven Hearn** (**Section § 1962(c)**), **Steven Hearn P.A.** (**Sections § 1962(a, b & c)**), respondeat superior to **Steven Hearn, Florida Lawyers Mutual Insurance Company** in conjunction with **Section § 1962(b & c)** violations, Defendant and **Sybil Murphy** (**Section § 1962(b)**, respondeat superior to **Steven Hearn and Steven Hearn P.A.,** for the above reasons.

**Section 11.** **Bernard Silver** (secondary enterprise) reversely discriminated against the Plaintiff under **(Title 42, Chapter 21, Section 1985(3))**, in case 14-CA-10278. See U.S. Supreme Court's 1976 *McDonald vs. Santa Fe Trail Transport Co.* Bigoted Bernard Silver, a minority accomplice, had the **nerve** to treat the Plaintiff as though he were a bigot, due to false information provided to him by the chief judge's office at the 13th Judicial Circuit. The Plaintiff was slandered per quod with Bernard Silver, by beyond reasonable doubt evidence as to Manuel Menendez authorizing his secretary, Kimberly Cash, to illegally and purposely tell Bernard Silver, as stated in her affidavit filed in case 17-CA-902, that the Plaintiff called Bernard Silver and Thomas Rydberg (not Jewish) "Jew buddies" and that "they probably attended the same synagogue", along with perhaps some real defamatory comments towards Bernard Silver not stated in her affidavit. By beyond reasonable doubt evidence, Manuel Menendez had everything to do with these false statements made, so that Bernard Silver would be upset enough to scold the Plaintiff in his court on 1-6-15 as a **ruse** to give Manuel Menendez a **cover** when he planned the illegal dismissal of case 14-CA-10278 in violation of the Civil RICO Act. Manuel Menendez implemented this plan to aid and abet HCSO in keeping the Plaintiff from obtaining property owed to him from probate case

12-CP-1669 and any other court awarded property that Florida's state judicial enterprise could illegally influence.  On 5-18-16 the Plaintiff believed that Bernard Silver knew what the basics of the RICO plan were from both Robert Foster and Manuel Menendez and complied with the plan to fool the Plaintiff, **but Bernard Silver, of Judah dissent, had to have harbored ill feelings (bigotry) towards the Plaintiff and Manuel Menendez for being the barer of bad news.**  The accomplice is:  **Bernard Silver** for the above reasons.

**Further Analysis of the Ultimate Facts and Laws Supporting the Counts of Section 11:**

The statute of limitations under Title 42, Chapter 21, Section 1985(3) is tolled in conjunction with the following:  Under the equitable tolling doctrine due to Charlene Honeywell, on 5-9-17, **1)** having mislead the Plaintiff during case 8-17-CV-219-7-36MAP as to case 14-CA-10278 having been dismissed due to an error made by Bernard Silver.  But the Plaintiff knew on 2-3-17 that the illegal dismissal of case 14-CA-10278 was due to Manuel Menendez's RICO plan, so he withdrew his FRCP 1.540(b)(1) motion during this case and ended it permanently.  Section § 1985(3) is tolled indefinitely because it was committed in conjunction with Bernard Silver having committed a **2)** fraud on the court and having **3)** acted as an accomplice after the fact in the

decedent's murder by covering it up in violation of Title 18, U.S. Code § 3.

**Section 12.** The **Florida Department of State and Legislative Affairs** are being sued by the Plaintiff for a **(permanent injunction under Title 42, Chapter 21, Section 1988)** to correct two (2) Florida laws that were used against the Plaintiff, in violation of his state and federal substantive due process rights during the course of this matter. Florida cases: SC18-590 from 2DCA case 2D17-2243, and case 17-CA-4051 from the 13th Judicial Circuit. **1)** In case SC18-590, the State of Florida implemented an illegal change in the Florida state constitution that currently **limits the Florida Supreme Court to review under Article V, Section 3(b)3 to just elaborated per curiam decisions.** This illegally denies some **chosen losers** their appellate rights in the Florida Supreme Court anytime a Florida district court of appeal has an illegal political agenda for denying a party their state and federal civil rights, all they have to do is **not** give an opinion as to why an order was affirmed. **This is a fraudulent violation under (Title 18, Chapter 96, Codes § 1961-1968), (Title 18, Chapter 13, U.S. Codes § 241 & 242), (Title 18, Chapter 63, U.S. Codes § 1341, 1343 & 1346), (Title 18, Chapter 96 Section 1962(b), (Title 42, Chapter 21, Section 1983)** and **(Fraud on the Court). And it**

started out as a conspiracy under <u>(Title 18, Chapter 96, Section</u> <u>1962(d))</u> that was concocted by organizers Jorge Labarga (Chief Judge of the Florida Supreme Court), Pamela Bondi (attorney general at the time), Rick Scott (governor at the time) and state district chief judges (management), to deny citizens their right to appeal false DCA rulings to the Florida Supreme Court, as a ruse to abide with state trial judges' illegal agendas, making the state and federal civil right violations also violations under the Civil RICO Act.   See *Wells v. State*, 132 So. 3d 1110 (Fla. 2014).   **<u>Under the RICO Act, there is no</u>** **<u>absolute legislative immunity from suit for damages caused</u>**.   See *Committee to Protect our Agricultural Water v. Occidental oil*, 235 F. Supp. 3d 1132, id at paragraph 54.

The Florida Supreme Court may review by conflict certiorari, a per curiam judgment of affirmance without an opinion, if an appellate court ruling creates a conflict with a decision of the Florida Supreme Court, or another Florida District Court of Appeal.   Foley v. Weaver Drugs, Inc., Florida Supreme Court No. 32357, (1965).   **A violation of state law by the Florida Supreme Court.**

And **2)** in case 17-CA-4051 for the Florida Legislature having enacted Florida Statute 68.093(2)(d)1 (vexatious litigant statute) that basically says:  A person as defined in s. 1.01(3) who, in the immediately preceding 5-year period, has commenced,

103

prosecuted, or maintained, **pro se**, five or more civil actions in any court in this state, except an action governed by the Florida Small Claims Rules, **which actions have been finally and adversely determined against such person or entity, has to post a security bond to litigate any more cases in a Florida state court.** This goes without saying that the five (5) determinations were legal and correct without any of them having been the result of judges and attorneys defrauding a party out of their state or federal civil rights by dismissing their cases illegally as members of the state judicial enterprise.

**Florida Statute 68.093(2)(d)1 is in violation of federal civil rights for three (3) reasons:  1)** it illegally treats pro-se litigants differently than attorneys, in that if an attorney lost 5 circuit civil court cases in favor of opposing counsel, he or she would **not** be deemed as a vexatious litigant and have to post a security deposit during his or her next circuit civil court case.  Or have to obtain leave of the administrative judge of that circuit to continue the case under Florida Statute 68.093(4).  **2)** Florida Statute 68.093(2)(d)1 fails to take into consideration the reasons for losing the court cases which may **not** have been due to the merits.  And **3)** Florida Statute 68.093(3)(c) is in violation of a litigant being declared indigent by the clerk of the court under Florida Statutes 57.081(1) by requiring them to post a bond in order to litigate

another circuit civil case. **For these three (3) reasons the current Florida's vexatious litigant statute should not continue to allowed officers of the court to deny pro se litigants their civil right to file suit for damages.**

Florida Statute 68.093 also violates the judgment made in a Florida 3DCA case that "pro se litigants are **not** held to 'a lesser standard than a reasonably competent attorney (RI. 72, 275)." *Silveira v. Quiroga*, So. 3d, 40 Fla. L. Weekly D287 (Fla. 3d DCA January 28, 2015).

Florida Statute 68.093(2)(d)1 pertains to litigants who were given fair and just opportunities to be compensated for damages according to state and federal laws, and due to the facts in their complaints not stating a claim that supported a cause of action upon which damages could have been awarded (a frivolous lawsuit), their cases were correctly dismissed. Contrary to this, the Plaintiff had clear and concise actionable claims that supported counts upon which damages should have been awarded in case 17-CA-4051, but Elizabeth Rice **intended** under **(Title 18, Chapter 96, Section 1962(d))** to defraud (cheat) the Plaintiff out of the opportunity to ever make it to trial in any future court case when she agreed to declare the Plaintiff a vexatious litigant as a favor to opposing parties in case 17-CA-4051, on 2-27-19 and filed her **intent** to do so in the case file as a memorandum on 2-28-19, but after the Plaintiff told her in a

case filed email on 3-6-19 that **he would be suing her under the Civil RICO Act, she declined to do so on 3-19-19.**

**The Supremacy Clause** of the United States Constitution (Article VI, Clause 2) establishes that the Constitution, federal laws made pursuant to it, and treaties made under its authority, constitute the **supreme law of the land. ... This makes the Supremacy Clause the cornerstone of the whole (entire) American political structure.** Under the Supremacy Clause, federal law is the supreme law of the land, and state courts must enforce it in absence of valid excuse. *Mims v. Arrow Financial Services, LLC*, U.S. 2012, 132 S. Ct. 740, 565 U.S. 368, 181 L. Ed. 2d 881, on remand 468 Fed. Appx. 936, 2012 WL 1382531.

**Preemption doctrine, flowing from Supremacy Clause** which "**invalidates state laws** that interfere with, or are contrary to, federal law." Sprint Spectrum L.P. v. Mills, 283 F.3d 404, 414-15 (2d Cir.2002). The doctrine is inapplicable to potential (likely) conflict between two federal statutes. *Tufariello v. Long Island R. Co.*, C.A. 2 (N.Y.) 2006, 458 F. 3d 80.

**Federal law may preempt state law under theories of either express, field, or conflict preemption.** *National City Bank of Indiana v. Turnbaugh, D. Md.* 2005, 367 F. Supp. 2d 805, affirmed 463 F. 3d 325, certiorari denied 127 S. Ct. 2096, 550 U.S. 913, 167 L. d. 2d 831.

Section 1964(a) of the RICO Act provides that federal district courts may issue orders to "prevent and restrain" violations of Section 1962.   Section 1964(b) authorizes the U.S. Attorney General to institute proceedings "under this section."   <u>A permanent injunction is all that the Plaintiff is asking for in this Section</u>.   The Defendants are:   **The Florida Department of State and Legislative Affairs** for the above reasons.

Section 13.   All government and corporate employee accomplices, past and present, are in violation of <u>**(Title 18, chapter 95, U.S. Code § 1954)**</u>, offer, acceptance, **or solicitation to influence operations of employee benefit plan.   A benefit plan in which government, or corporate, employees continue working in their assigned positions with perks and pay raises while being in good standing with their enterprise, is a highly valued benefit plan!   <u>It is not the duty or policy of reputable government agencies or corporations to have their employees commit RICO predicate acts as tasks to be performed on the job for their salaries or department budget allotments, some of which always seems to turn into perk money to influence others into getting dirty jobs completed that defraud others out of their state and federal civil rights!</u>** The accomplices are: Rick Scott, Stephen Muldrow, Pamela Bondi, David Bowdich, Kellyanne Conway, Donald Trump, Tanya Menton and Rick Scott,

Chad Chronister from 9/2017 to present, David Gee from 3/2012 to 9/2017, James Previtera during the month of 3/2012, Claudia Isom, Mary Mainland, Manuel Menendez, Ronald Ficarrotta, Bernard Silver, William Levens, Robert Foster, Mark Wolfe, Richard Nielsen, Paul Huey, Elizabeth Rice, Robert Foster, Catherine Catlin, Robert Bauman, Joelle Ober, Chet Tharpe, Jack St. Arnold, Jorge Labarga, Morris Silberman, Charlene Honeywell, Morris Silberman, John Badalamenti, Marva Crenshaw, Edward LaRose, Patricia Kelly, Matthew Lucas, Robert Morris, Susan Rothstein-Youakim, Samuel Salario, Daniel Sleet, Anthony Black, Craig Villanti, Nelly Khouzam, David McClain, Christopher Brown, Jason Gordillo, Mary Mainland, Andrew Mallory, Bowen Brown, Robin Black, Michael McGirney, Clarence Thomas, Claudia Isom, Janice Pickett, Michael McGirney, Andrew Mallory, Robin Black, Michael D'Lugo, Joseph Riopelle, Jessica Welsh, Abraham Shakfeh, William Linero Jr., Charles Canady, Ashley Moody, Ron DeSantis, Ricky Polston and Stevan Northcutt.


**Further Analysis of the Ultimate Facts and Laws Supporting the Counts of Section 13:**

Section § 1954 (4) a **person** who, or an **officer**, **counsel**, **agent**, or **employee** of an **organization** which, provides benefit plan services to such plan receives **or** <u>**agrees to receive**</u> or **solicits**

any fee, kickback, commission, gift, loan, money, or something of value (the benefit plan of keeping one's paid position and being in good standing with the enterprise due to continued acts of loyalty to it) because of or with intent to be influenced with respect to, any of the actions, decisions, or other duties relating to any question or matter concerning such plan or any person who directly or indirectly gives or offers, or promises to give or offer, any fee, kickback, commission, gift, loan, money, or something of value (the benefit plan of keeping one's paid position and being in good standing with the enterprise due to continued acts of loyalty to it) which is prohibited by this section, shall be fined under this title or imprisoned not more than three years, or both:  Provided, That this section shall not prohibit the payment to or acceptance by any person of bona fide salary, compensation, or other payments made for goods or facilities actually furnished or for services (honest services) actually performed in the regular course of his duties (not salaries paid out by companies or government agencies to their employees for breaching federal laws that violate civil rights (RICO Act)) as such person, administrator, officer, trustee, custodian, counsel, agent, or employee of such plan, employer, employee organization, or organization providing benefit plan services to such plan.

Unfortunately <u>none</u> of the employees or agents in this Section can be sued by their employers for breaching a fiduciary duty to them when they committed mail and/or wire fraud solicitations to their co-conspirator judges, who were in violation of Title 18, Chapter 63, Sections 1341 and/or 1343, when they committed honest services fraud under Title 18, Chapter 63, U.S. Codes § 1346 on the Plaintiffs and decedent. When this happened, these RICO predicate acts committed by the judges made all of the employers vicariously liable under the Respondeat Superior Doctrine for damages because <u>the employers knew and authorizing all of the mail and wire frauds either before, or subsequently acquiescing in after, the injuries were sustained by the victims</u>. Consequently, the employers in this matter have no legal recourse against their co-conspiring employees.


Section 14.   Clarence Thomas is in violation of <u>(Title 18, Chapter 1, U.S. Code § 4)</u> - Misprision of felony:

Whoever having knowledge of the actual commission of a felony cognizable by a **court of the United States** (an identifiable federal violation), conceals and does not as soon as possible make known the same to some judge or other person in civil (the Department of justice (DOJ)) or military authority under the **United States**, shall be fined under this title or imprisoned not more than three years, or both. (June 25, 1948, Ch. 645, 62

110

Stat. 684; Pub. L. 103-322, title XXXIII, §330016(1)(G), Sept. 13, 1994, 108 Stat. 2147).

Acting in good faith, the Plaintiff says: **1)** if Clarence Thomas had knowledge of the decedent's murder from having knowledge of the merits of case U.S. SC17-9268, but decided to deliberately ignore his U.S. statutory duty under Title 18, Chapter 1, U.S. Code § 4 to forward the decedent's murder information to the DOJ for an investigation to be conducted, actively concealing the murder information that was before him in case U.S. 17-9268 by not officially hearing this case as a means of not having to inform anyone of the decedent's murder, just like Robert Foster did by dismissing case 12-CP-1669 illegally with prejudice before discovery had really started, **the Plaintiff asks this U.S. district court to make Clarence Thomas comply with (Title 28, U.S.C. § 1361)!** And **2)** if Clarence Thomas for some grossly negligent reason, did not know the basics what case U.S. SC17-9268 was about as the presiding judge, **he needs to retire after he hears case U.S. SC17-9268, and again forwards the contents of it to the DOJ!** The Defendant is: **Clarence Thomas,** for the above reasons.


**Section 15.  Clarence Thomas, Stephen Muldrow, Kellyanne Conway and David Bowdich are being sued for violating (Title 18, Chapter 216, Section 3333) – for Non-criminal Misconduct:**

111

Misconduct is wrongful, improper, or unlawful conduct **motivated by premeditated or intentional purpose <u>or by obstinate indifference to the consequences of one's acts</u>**. <u>**Misconduct can be considered an unacceptable or improper behavior**</u>. Generally, a **civil defendant** will be liable for non-criminal misconduct, if the defendant **owed a duty of care as a fiduciary would towards the plaintiff, and the defendant breached that duty of care by <u>knowingly allowing the same foreseeable harm to be committed into the future, resulting in future harm to the plaintiff</u>**. In tort law, <u>a duty of care</u> is a legal obligation which is imposed on an individual requiring <u>adherence to a standard of reasonable care</u>. <u>**Unreasonable care, would be behavior that knowingly fosters future harm that is foreseeable and results in harm to others**</u>. Once the four (4) high ranking U.S. government Defendants cited in this Section were constructively notified of the decedent's murder being covered up and the Plaintiff being defrauded in his property and/or business by racketeers working in state government agencies, they had a fiduciary duty to him to act appropriately, but deliberately failed to do so to avoid having to expose, humiliate and punish their affiliates who committed the illegal RICO acts, with their blessings! The idiom that comes to the Plaintiff's mind is "<u>do not have romantic relationships with any co-workers</u>." And within the

crooked, American government, everyone is in bed with each other!

Since this is a RICO Act (criminal and/or business and/or personal tort) violation complaint, all that the Plaintiff is asking for in this Section is for this court to enact a Title 18 U.S. Code § 3333 Report to see how many more murders have been covered up by these four (4) Defendants and their respective agencies (U.S. Supreme Court, DOJ, Trump Administration and FBI), all working together as a large team of racketeers within the same U.S. government based enterprise (Trump Administration), in violation of Title 18, Chapter 96, Sections 1962(b & c).


Under an 18 U.S. Code § 3333 Report:

(a) A special grand jury impaneled by **any district court**, with the concurrence of a **majority of its members, may,** upon completion of its original term, or each extension thereof, submit to the court a report—

(1) concerning **a) noncriminal misconduct,** b) malfeasance, **or c)** misfeasance in office involving organized criminal activity by an appointed public officer or employee, as the basis for a recommendation of removal or disciplinary action; or

(2) regarding organized crime conditions in the district.

Both Kellyanne Conway and Donald Trump were given an **offal lot of constructive notice** of this matter by the Plaintiff either directly or through Trump Administration executives under them, but both Kellyanne Conway and Donald Trump failed to act appropriately. All four (4) defendants in this Section violated: **1)** The Respondeat Superior Doctrine as negligent **supervisors** knowingly hiring weak minded, corruptible employees and then illegally instructing them on what employment requirements not to perform. **2)** Title 18, Chapter 96, Sections 1961-1968 (specifically Sections § 1962(b & c)), **3)** Title 18, Chapter 13, U.S. Codes § 241 & 242 and **4)** Title 42, Chapter 21, Section 1983 (co-conspirators in an action at law). **No hard feelings, but the four (4) crooked government employees cited in this Section owe the Plaintiffs and other victims for damages! Six months from around 9-15-17, when Senator Marco Rubio's office still could not get a written response from the FBI or the DOJ because the decedent's murder fell on deaf ears, it was safe to say that the Trump Administration permanently halting prosecutorial investigations for racketeering by state agencies through federal investigative agencies, is what they do the best for government employed Americans!** Both Donald Trump and Kellyanne Conway hired naive subordinate Trump Administration employees, paid them well, and then instructed them to do nothing to help citizens when complaints came in about local

government corruption.  **Demoralizingly sickening**!  Kellyanne
Conway ran Donald Trump's 2017 election campaign on the promise
of getting rid of corrupt career politicians in congress as well
as jailing a few, but had White House staff pass consumer
complaints to her where she turn a blind eye to them.  If Donald
Trump could not fulfill his employment requirements because he
was worried about the repercussions from making enemies in high
places, he should have never run for office.  Consequently, both
Donald Trump and Kellyanne Conway most definitely acted outside
the scope of their employment requirements, in violations of
**Section 3 of Article 2, of the U.S. Constitution, the Take Care
Clause.**  So they are personally responsible for damages that the
Trump Administration caused the Plaintiff.  The Defendants are:
**Clarence Thomas, Stephen Muldrow, Kellyanne Conway and David
Bowdich,** for the above reasons.

**Section 16.   ABC, Inc.,** (forth enterprise) defrauded and
deprived both the Plaintiff and decedent of their state and
federal substantive due process rights (civil rights) under the
Civil RICO Act on 6-21-18 when they illegally stopped the
Plaintiff's expectancy with USC as a participant in violation of
**1)(Title 18, Chapter 96, Codes § 1961-1968), 2)(Title 18, U.S.
Code § 3), 3) (Title 18, Chapter 63, U.S. Codes § 1341, 1343 &
1346), 4) (Title 42, Chapter 21, Section 1983), 5) (Title 18,**

**Chapter 13, U.S. Codes § 241 & 242), 6) (vicarious liability under the Respondeat Superior Doctrine, in conjunction with Section § 1962(a, b & c) violations, 7) (Fraud on the Court) and 8) (California Duty to Act law).** On 6-12-18, Willow Bay was working in her individual capacity at the State of California owned University of Southern California (USC), during the course of her official capacity at ABC, Inc. as part owner of ABC, Inc. by marriage rights, when she instructed and authorized under **(Title 18, Chapter 96, Sections 1962(a & b))**, Tanya Menton, under **(Title 18, Chapter 96, Section 1962(c))** to, **A)** cover-up the prior racketeering activities committed under Title 18, Chapter 96, Section 1961(1) by the three (3) local Florida enterprises, which were: **1)** murder (Title 18, Section § 1959), **2)** extortion (Title 18, Section § 880), **3)** extortionate credit transactions (Title 18, Sections § 891-894), **4)** influencing the operations of an employee benefit plan (Title 18, Section § 1954), **5)** money laundering (Title 18, Section § 1956) and **6)** wire and/or mail fraud used to implement honest services fraud under Title 18, Sections § 1341, 1343 & 1346 for the purposes of defrauding both the Plaintiff and decedent out of their state and federal substantive due process rights (civil rights). And ABC, Inc. monetarily injure the Plaintiff in his property and business interests by maliciously breaching the Plaintiff's expectancy with USC under **9) (tortious interference with**

116

**expectancy)**, when Willow Bay, through Tanya Menton, told the **Plaintiff in a letter dated 6-21-18, not to contact Dean Willow Bay at USC or else suffer the consequences at the hands of ABC, Inc. security, 10) (violation of 1st amendment rights under the U.S. Constitution)**. See *Garret v Taylor*, 79 Eng. Rep. 485 (K.B. 1620); *Tarleton v McGawley*, 170 Eng. Rep. 153 (K.B. 1793) and *Keeble v Hickeringill*, (1707) 103 Eng. Rep. 1127.

**Tortious interference claims can be heard in federal court provided they meet the requirements under Title 28 U.S.C. § 1332(a):** Jurisdiction to matters that involve **complete diversity** of citizenship between the parties **must involve an amount in controversy that exceeds at least $75,000.** The ABC, Inc. headquarters are located at 77 West 66th Street Fifth Floor, New York, NY 10023. And the Plaintiffs are located in Tampa, Florida, 33612.

Triple remedial RICO damage amounts exceeding **3.9 million dollars U.S. currency at a nominal rate of interest are demanded, not including attorney's fees with a lodestar multiplier that will be owed**, but under both Section § 1983 (for having helped Florida's state judicial enterprise defraud the Plaintiff and decedent) and the tortious interference (violation of expectancy with USC) laws, regular damages along with punitive amounts and attorney's fees could be asked for instead. Together, Willow Bay and Tanya Menton participated under **(Title**

**18, Chapter 96, Sections (a, b & c))**, by tortiously interfering with the Plaintiff posting a journalism job at USC, specifically at the College of Journalism, seeking to employ a student, or other USC patron, to write and publish a story about the decedent's fate and the fleecing of the elderly in America to aid and abet **1)** Florida's state judicial enterprise and **2)** Trump Administration and their affiliates, all of whom racketeered. This would have **definitely and absolutely** exposed what was happening to at least the Plaintiff and decedent (possibly others) by the three (3) local enterprises. **And as a result of public exposure to this matter, the local Defendants and accomplices would have definitely and absolutely stopped defrauding the Plaintiff and decedent. Thus, injuries in the future to the Plaintiffs' property and/or business would have stopped occurring for which ABC, Inc. is now liable for. Consequently, ABC, Inc. is not only vicariously liable to the Plaintiff and decedent under the Respondeat Superior Doctrine, but owes the Plaintiffs for any future injuries sustained after 6-21-18 from the same types of racketeering activities committed in their court cases by any additional racketeers. Willow Bay as one of the owners of ABC, Inc., went out of her way to participate in having the Plaintiff continue to be damaged in his court cases when she, through Tanya Menton, illegally stopped the Plaintiff from disclosing local government**

racketeering news to the public while doing business with USC, thus aiding and abetting Florida's state judicial enterprise under Title 18, Chapter 96, Section 1962(c). Consequently, as the Plaintiff continues to be defrauded and deprived in his business and property interests by the Florida's state judicial enterprise for profit or gain (something of value), ABC, Inc. will <u>continue</u> to be liable to the Plaintiff and any other parties who join him in filing future lawsuits while sustaining racketeering damages from this same enterprise!

ABC, Inc. is liable for <u>any future court case injuries</u> sustained by the Plaintiffs under Title 18, Chapter 96, Section 1962(c), the same as the principles because its employees' who participated in this matter, caused future foreseeable harm to the Plaintiff.

For either a § 1962(d) conspiracy claim or a racketeering activity in violation of § 1962(c), the defendant need not agree to operate or manage the enterprise. ***Salinas v. United States***, 522 U.S. 52, 63 (1997) (holding that "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense."). Rather, the defendant may be liable if it knowingly agrees to facilitate others who operate or manage the enterprise.

The court rejected the notion that business or property interests harmed by a defendant's acts must actually be the

target of the predicate act, and remanded the case to determine if the plaintiff could satisfy the remaining aspects of his claim. Diaz v. Gates, 420 F. 3d 897 (9th Cir. 2005), Id. at 900-03. The Defendant is: **ABC, Inc. for being vicariously liable under the Respondeat Superior Doctrine in conjunction with Section § 1962(a, b & c) violations** and **for being as liable to the Plaintiffs as the principles within Florida's state judicial enterprise under Title 18, Chapter 96, Section 1962(c).** The accomplices are: **Willow Bay** and **Tanya Menton,** for the above cited reasons.

**Further Analysis of the Ultimate Facts and Laws Supporting the Counts of Section 16:**

They say money is the root of all evil. And conspiracy theories are usually right on the money accurate at who is at fault because the plot in each one of them always centers on predictable, human nature bringing out the worst in corruptible, soulless, descendants of apes. This predictability is inherent in everyone without a moral conscience, and given the opportunity for many unconscionable, rotten to the core vermin achieving their dreams, aspirations and desires at the expense of the poor, ignorant and gullible, they gladly participate in real life conspiracies. **Willow Bay did**!

On 6-21-18, Willow Bay benefit herself and her company ABC, Inc. when she had Tanya Menton act as her RICO agent to help defraud the Plaintiff under Title 18, Chapter 63, U.S. Codes § 1341, right out of posting a legitimate ad at USC (tortious interference with expectancy). When Willow Bay did this, she also **aided and abetted** the local judges (secondary enterprise or state judicial enterprise) in defrauding and depriving the Plaintiff under: 1) (Title 18, Chapter 96, Codes § 1961-1968), 2) (Title 18, Chapter 63, U.S. Codes § 1341, 1343 & 1346), 3) (Title 18, U.S. Code § 3), 4) (Title 42, Chapter 21, Section 1983), 5) Title 18, Chapter 13, U.S. Codes § 241 & 242, 6) Title 18, Chapter 95, Section 1956 and 7) Fraud on the Court. Thus, foreseeably injuring the Plaintiff, and anyone who was a joint plaintiff with him, in pursuing their property and/or business interests during future court case proceedings.

**Willow Bay benefited as one of the principals (owners) of ABC, Inc. (no distinction requirement under RICO between an owner and a company, Petro-Tech, Inc., 824 F. 2d at 1361) under Title 18, Chapter 96, Section 1962(a), by not having been humiliated by the U.S. Department of State (DOS), U.S. Department of Public Affairs (DOPA), U.S. Department of Press Relations (DOPR) and her family members, for allowing the Plaintiff to release information about a government scandal that included Donald Trump, Rudolf Giuliani and Kellyanne Conway to the public <u>right</u>**

**under Willow Bay's nose** that her broadcasting company was **obligated to cover-up!** ABC, Inc. is most definitely affiliated with all of these government agencies. **For the security of officials within the U.S. government, not for American citizens' security, but for government officials' security, television broadcasting stations (major outreach broadcasting companies) have to continually get permission from the DOS as to what they can air on television, so that restricted information that changes daily is not aired to the public. The U.S. government absolutely, positively, controls the release of any and all televised information to the public, especially any information about a government scandal, unless approved by the DOS as either retaliatory, distractionary or disinformation!**

On 6-12-18, the Plaintiff sent Willow Bay a copy of a letter he had sent to Kellyanne Conway who oversees all U.S. government agencies within the Trump Administration which includes the U.S. State Department (DOS), explaining to Kellyanne Conway that the decedent's murder was being covered up by Florida state government officials, but she ignored Section 3 of Article 2 of the U.S. Constitution by turning a blind eye to the Plaintiff's complaints. **This was the reason Willow Bay recklessly instructed Tanya Menton to:  1) violate the Plaintiff's U.S. civil rights on 6-21-18 by both denying him the ability to follow up with her on his business dealings with USC and by also**

2) threatening him with ABC's security, if he did not cease exercising his U.S. civil rights to post a murder story advertisement at USC's department of journalism, when ABC, Inc. was not affiliated with USC. <u>Just how many murders a year does ABC, Inc. and other media conglomerates help state and federal governments cover-up? Every single one that the state and federal government wants covered up! And that is a lot of murders! The Plaintiff is still going to have the decedent's murder cover-up disclosed to the public, and Willow Bay is now justifiably part of this complaint</u>! If it is at all possible to shame Willow bay, she should be feeling a little bit humiliated, if only because of her ignorance of applicable federal laws.

It will be interesting to see how ABC, Inc. decides to handle this newsworthy lawsuit, hopefully by finally taking the high road as one honest and brave, patriotic and trustworthy, broadcasting company working hard to inform the public of scandals committed by <u>their affiliates</u> in government and giving them all the bad publicity they deserve! <u>It is a RICO Act violation under Title 18, Chapter 96, Sections 1962(a or b) for any broadcasting station owner or company manager to facilitate under Title 18, Chapter 96, Section 1962(c), or conspire to facilitate, under Title 18, Chapter 96, Section 1962(d), any future racketeering activities committed for whatever reason</u>! And <u>it is a RICO Act violation under Title 18, Chapter 96,</u>

Section 1962(c) for any broadcasting station employee or agent to facilitate, or conspire to facilitate, under Title 18, Chapter 96, Section 1962(d), any future racketeering activities committed for either the company's, or owner's, benefit!

If ABC, Inc. had only aired the Plaintiff's story given to them at their ABC, Inc. branch office in Tampa, Florida when Adam Waiser was contacted by the Plaintiff, there would have been no need for this complaint to have been written and filed in this court. Unfortunately broadcasting companies do not have a fiduciary duty to the public to report illegal acts committed on citizens, but if the acts are serious enough and continuous, they are required to act under the Duty to Act law. Florida and California are Duty to Act law states. Duty to act refers to duty of a party to take necessary action to prevent future harm to another party or the general public. Breach of duty to act may make a party liable for damages, depending on the circumstances and relationship between the parties. Determining whether there was an injury requires meeting the injury element of the prima facie case, the injury must be one of two things: Bodily harm or harm to property (can be personal property or real property). Pure economic loss (not property or emotional damages) will usually not meet the injury requirement. Sometimes emotional distress/harm may meet the bodily harm requirement (even if there is no accompanying physical harm). Legal

Information Institute.   **ABC, Inc. is not just being sued for maliciously causing the Plaintiffs foreseeable property damages as of 6-21-18, but for causing them unnerving distress type damages as well**.

**Section 17.**   In 3/2012, by beyond reasonable doubt evidence, **Claudia Isom and James Previtera** participated in this matter under **(Fraud on the Court)** in conjunction with (Title 18, Chapter 95, U.S. Code 1962(d & c)), violations under **(Title 18, Chapter 96, Section 1961-1968)**, when they **defrauded** the Plaintiff in case 12-CP-249 out of his state and federal substantive due process rights (civil rights) by participating in honest services fraud, violations under **(Title 18, Chapter 63, Sections 1341, 1343 & 1346)**.   **This prevented** him from his U.S. constitutional rights under **(Title 18, chapter 13, Section 241)** and both **defrauded and deprived** him of his U.S. constitutional rights respectively under **(Title 18, Chapter 13, Section 242)** and **(Title 42, Chapter 21, Section 1983)**.   **Manuel Menendez, Claudia Isom, David Gee and James Previtera formed the initial alliance between HCSO and 13th Judicial Circuit in Tampa, Florida for monetarily injuring the Plaintiff in the future. The decedent's murder cover-up was implemented by HCSO due to a vendetta that David Gee and James Previtera had since 2/2012 against the Plaintiff.   The decedent's murder cover-up was just**